Judy DAUGHERTY, Plaintiff–Appellee,

v.

**LUMBERMEN'S UNDERWRITING ALLIANCE, Defendant–Appellant.**

Supreme Court of Tennessee, at Knoxville.

Nov. 5, 1990.

OPINION

FONES, Justice.

Defendant appeals from an award of workers' compensation benefits at the conclusion of the second trial in the Scott County Chancery Court. The first trial resulted in a judgment for defendant, dismissing Plaintiff's suit. A timely motion for new trial was overruled. That action was followed by a motion for relief under Tenn.R.Civ.P., Rule 60, based upon the identical ground relied upon in the motion for a new trial. That motion was granted and the trial judge recused himself from hearing the new trial, "so that both parties will have an even start."

A special judge appointed by the Chief Justice presided at the second trial and awarded Plaintiff benefits. We reverse and dismiss.

Plaintiff was employed by Tibbals Flooring Company in Oneida, Tennessee. Defendant was Tibbals workers compensation carrier at the time of Plaintiff's alleged injury. Plaintiff alleged and testified that she injured her back at the end of her work shift, midnight, while emptying a 55 gallon waste barrel of scrap wood. She described how she felt at the time she sustained the injury as follows:

> ... it felt like my hips came apart, out of place, my legs wouldn't work right, I couldn't get them to move when I wanted to, and I got numb all over.... like electricity going through you, to your brain even.

Defendant denied that Plaintiff sustained a back injury on 16 February 1987 or at any other time material to the case while working at Tibbals.

Plaintiff testified that her leg had been hurting for three or four weeks prior to 16 February 1987, but she had been able to work. She had seen Dr. Maxwell Huff prior to 16 February 1987 because of the pain in her leg. He gave her an anti-inflammatory drug and sent her to the hospital for X-rays, and referred her to Dr. William Foster, an orthopedic surgeon. In fact, Dr. Huff made the appointment for Plaintiff with Dr. Foster for the morning

David H. Dunaway, LaFollette, for plaintiff-appellee.

David E. Smith, Knoxville, for defendant-appellant.

of 17 February 1987, at a time prior to Plaintiff's alleged accident on 16 February.

Dr. Foster testified by deposition that when he saw her on the morning of 17 February 1987 she was, "complaining of pain in her back and down her left leg. Said she had been hurting about a month. No history of injury. She said she had continued to work. As a matter of fact she had worked the day before." He diagnosed her that day as having an acute ruptured disc, admitted her to the hospital and ordered a myelogram. It showed a "large ruptured disc." On Friday, 20 February 1987, Dr. Foster performed surgery and excised a large ruptured disc at the L4–5 level.

On cross-examination Dr. Foster affirmed that Plaintiff had never given him a history of having sustained an injury; said that she told him she had been hurting for about a month and agreed that pain radiating up her leg and into her hip was consistent with the ruptured disc that she had. He confirmed that a ruptured disc could occur as a result of a variety of activity, expressly, coughing, climbing, getting in and out of a car, bending to tie a shoe and falling in a bathtub.

Steven Yoho testified that he was Director of Personnel at Tibbals in February 1987; that he received a telephone call from Plaintiff on Friday morning 20 February 1987 and made notes of that conversation; that Plaintiff told him she was in the hospital awaiting results of a myelogram test that had been performed and she might have surgery on her back; that the purpose of her call was to ask if workers' compensation would pay for the surgery; that he told her that he could not respond to that because he was not aware of any accident she had sustained at work; that she told him she had hurt her back while working with Tim Cross approximately a year ago, wasn't sure of the date. Yoho told her he would check the records and see what he could find and that, "we could get back together." He was asked if she made any mention of having been hurt recently while emptying or lifting a barrel and he responded, "no."

Yoho testified that he checked the company records and found no long form accident report involving Plaintiff, but on a supervisor's log, where mild accidents are noted, Tim Cross had logged a first aid accident on 4 October 1985, that recorded Plaintiff had strained her back and was given aspirin. That was the only record of any injury to Plaintiff in the company files.

Guy Sheilds testified that he arrived at Tibbals the last of February 1987; that at the time of the trial he was vice-president of Human Resources; that shortly after his arrival in Oneida Steve Yoho was briefing him and told him about Plaintiff's telephone call from the hospital; that on 11 March 1987 Plaintiff came to his office and he and Yoho met with her; that Plaintiff told them that her condition was related to the October 1985 incident when she crawled under a table and hurt her back; that when they told her that there was a statute of limitations on a workers compensation injury she reacted with shock and there was a long pause in the conversation. They discussed medical insurance and thereafter she said she was hurt the last night she worked when she emptied a barrel and her leg hurt. Both Shields and Yoho testified that was the first they had heard of any work injury to Plaintiff on 16 February.

Ronald Smith testified that he was Plaintiff's supervisor in February 1987 on the shift from 3:30 p.m. to midnight; that he noticed sometime in February 1987 that Plaintiff was limping and he asked her why; that she told him, "she had slipped in her bathtub, ran her knee across the rail and it was hurting her all the way up to her hip"; that he was told she was in the hospital because of her back but he had no knowledge or report of any work injury.

The deposition of Dr. Foster was taken on 9 September 1988 and the first trial of this case was held on 27 September 1988. It is readily apparent that when Dr. Foster's deposition was taken Plaintiff's first counsel was aware of the problem presented by Plaintiff's failure to tell Dr. Foster on the morning of 17 February that she had hurt her back around midnight, less

than 12 hours before she was in his office. It is also readily apparent that Plaintiff and her first counsel were aware, when Plaintiff testified at trial on 27 September of the problem presented by Dr. Foster's testimony about the history she gave, or failed to give, and the conversations Plaintiff had had with representatives of her employer. Suffice it to say that Plaintiff's attempts to surmount those problems are not convincing.

The trial judge ruled from the bench, concluding that, "The court just cannot find from the medical testimony causation, connection between the injury on the 16th and the ruptured disc. The doctor doesn't say it's related, and I have to have medical evidence of that fact." Judgment to that effect was entered on 7 October 1988.

■ The standard of appellate review of the findings of fact by the trial court, applicable to this case, is *de novo*, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Alley v. Consolidated Coal Co.*, 699 S.W.2d 147 (Tenn. 1985).

■ We find that the preponderance of the evidence supports a finding that Plaintiff did not sustain an injury on 16 February 1987, arising out of or in the course of her employment at Tibbals. That finding reaches the same result reached by the trial judge, at the first trial, but for a reason that rendered his finding of a lack of medical causation immaterial.

That finding renders all of the proceedings that followed moot. However, we will discuss two post-trial motions filed by Plaintiff because they present a procedural problem not heretofore addressed in this State.

On 28 October 1988, Plaintiff filed a "motion for new trial and/or in the alternative motion for relief from judgment and/or in the alternative motion to amend judgment." The sole ground in support of the motion was that Plaintiff's "previous attorney" was guilty of "mistake, inadvertence, surprise or excusable neglect" in failing to ask Plaintiff's treating physician a proper question concerning the causation of Plaintiff's work related injuries. That motion was accompanied by an affidavit of Plaintiff, wherein she said that her attorney had not allowed her to review Dr. Foster's deposition, had not discussed it with her, and that she was unaware that questions establishing causation had not been asked until the end of the trial when the court ruled.

A hearing on the motion was held on 24 December 1988.

On 30 December 1988, the trial judge entered an OPINION denying the motion for a new trial and other relief wherein he reaffirmed his holding that medical causation had not been proved and rejected Plaintiff's suggestion that he should order an independent evaluation.

On 3 January 1989, Plaintiff filed a motion entitled, *"PLAINTIFF'S ADDITIONAL MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60 OF THE TENNESSEE RULES OF CIVIL PROCEDURE"*, alleging exactly the same ground contained in the motion filed on 28 October 1988, to wit, "mistake, inadvertence, surprise and excusable neglect of Plaintiff's previous attorney" in failing to ask the treating physician a proper causation question.

■ That motion was, in substance, nothing more than a motion to reconsider the motion for a new trial because it was brought on the identical single ground alleged in both motions.

Tenn.R.Civ.P. 59.01 reads as follows:

**59.01. Motions Included.**—Motions to which this rule is applicable are: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 54.04(2) to assess costs; (4) under 59.02 for a new trial; or (5) under Rule 59.04 to alter or amend the judgment. These motions are the only motions contemplated in these rules for extending the time for taking steps in the regular appellate process. Motions to

reconsider any of these motions are not authorized and will not operate to extend the time for appellate proceedings.

The purpose of the rule is to bring finality to proceedings in the trial court when the trial judge has ruled upon any of the listed motions. Thus, Plaintiff's second motion filed on 3 January 1989 was prohibited under Rule 59.01 and was a nullity.

The result is that the judgment following the second trial is reversed and Plaintiff's suit is dismissed. Costs are adjudged against Plaintiff.

DROWOTA, C.J., and COOPER, O'BRIEN and DAUGHTREY, JJ., concur.