IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 28, 2010 Session

MARK COOPER, INDIVIDUALLY AND ON BEHALF OF
THE HEIRS AT LAW OF LESLIE PHILLIPSEN
V.
THOMAS N. TABB, M.D., INDIVIDUALLY, THOMAS N. TABB, P.C.,
AND PERINATAL ASSOCIATES, P.C.

An Appeal from the Circuit Court for Shelby County
No. CT-007175-00     Robert L. Childers, Judge

No. W2009-02271-COA-R3-CV - Filed December 22, 2010

This medical malpractice case involves the reconsideration of an order granting a new trial. The patient, in her second trimester of pregnancy, presented at the hospital with abdominal pain and bleeding. Her treating physician consulted with a maternal-fetal specialist physician. The patient suffered a placental abruption, and the fetus died in utero. Later that day, the patient developed a blood-clotting disorder. She died that evening. The patient's husband filed this lawsuit against the treating physician, the hospital and its employees, and the maternal-fetal specialist physician. A settlement was reached with all of the defendants except for the maternal-fetal specialist, and a jury trial was held as to only the specialist. The jury returned a verdict in favor of the defendant specialist. The trial court granted the plaintiff husband's motion for a new trial. Three years later, the defendant specialist filed a motion asking the trial court to reconsider its order granting a new trial. Upon reconsideration, the trial court granted the motion and reinstated the jury verdict. The plaintiff husband now appeals. We reverse, concluding that the trial court had jurisdiction to reconsider its initial order, and that the trial judge's remarks, taken as a whole, indicate he was not satisfied with the jury verdict. Accordingly, we remand for a new trial.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Reversed and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Thomas J. Long and Cheryl P. Long, Collierville, Tennessee, and Michael L. Weinman, Jackson, Tennessee, for the appellant, Mark Cooper.

William D. Domico, W. Bradley Gilmer, and Jessica M. Hackett, Memphis, Tennessee, for the appellee, Thomas N. Tabb, M.D., Individually, and Thomas N. Tabb, M.D., P.C., and Perinatal Associates, P.C.

## OPINION

### FACTS AND PROCEEDINGS BELOW

### Facts

This case arises out of the tragic death of a mother and her unborn child. Leslie Phillipsen ("Phillipsen"),[1] and Plaintiff/Appellant Mark Cooper ("Cooper") were married for almost five years. Their son, Aidan, was born in 1997. In the summer of 1999, Phillipsen became pregnant with their second child.

On December 10, 1999, Phillipsen, then about twenty-five weeks pregnant, stayed in bed most of the day.[2] The next day, December 11, 1999, at 8:30 a.m., Phillipsen presented at the Defendant Baptist Memorial Hospital in Memphis, Tennessee, reporting vaginal cramping and bleeding. She was examined by her treating obstetrician/gynecologist, Defendant John Austin, M.D. ("Dr. Austin"). Sometime after her initial examination by Dr. Austin, Dr. Austin left Phillipsen to visit other patients one floor above the hospital's labor and delivery area. At that time, Phillipsen was left in the care of a triage nurse, Defendant Maggie Briggs, R.N. ("Nurse Briggs"). While in triage, the monitoring of Phillipsen and the fetus showed late decelerations, which are post-contraction decreases in fetal heart rate. Nurse Briggs did not advise Dr. Austin of these indications of fetal distress. At some point, Phillipsen's nursing care was transferred from Nurse Briggs to Melissa Clark, R.N. ("Nurse Clark"), a nurse who was new to labor and delivery. Nurse Clark likewise did not contact Dr. Austin about the late decelerations. The condition of Phillipsen's fetus continued to deteriorate.

---

[1]The record is unclear as to whether Leslie Phillipsen had obtained her PhD at the time of her death. She is at times referred to as "Dr. Phillipsen" in the record. In this Opinion, we refer to her as "Phillipsen" only to avoid confusion by the reader, given the number of defendants whose title is also "Dr." No disrespect is intended from this choice.

[2]The background facts are set out in accordance with the allegations in the complaint and as established at trial.

Dr. Austin returned to see Phillipsen at around 10:15 a.m. By that time, Phillipsen's fetus showed no activity. A few minutes later, at 10:20 a.m., Dr. Austin consulted with Defendant/Appellee Thomas Tabb, M.D. ("Dr. Tabb"), a maternal-fetal specialist. Tests at that time showed that a massive placental abruption[3] had occurred and confirmed fetal demise. Consequently, induction for a vaginal delivery was initiated.

Meanwhile, Phillipsen developed disseminated intravascular coagulation, a blood-clotting disorder. Dr. Austin again consulted with Dr. Tabb about Phillipsen's condition. Between 9:00 and 10:00 p.m. the evening of December 11, Baby Girl Cooper was delivered as a stillborn.

Efforts were made to treat Phillipsen's condition, but she nevertheless worsened. Finally, roughly two hours later, just after midnight, Phillipsen died at thirty-three years of age.

**Lawsuit Filed**

On December 8, 2000, Cooper filed this medical malpractice wrongful death lawsuit in the Shelby County Circuit Court. The case was assigned to Division IX, the Honorable Robert L. Childers presiding. Cooper filed the lawsuit in his individual capacity and also in a representative capacity as the legal representative of Baby Girl Cooper and Phillipsen, and also of his son, Aidan. Named as defendants were Dr. Austin, Dr. Austin's medical group (Gynecology and Obstetrics, P.C.), Dr. Tabb, Dr. Tabb's medical group (Perinatal Associates, P.C.), Baptist Memorial Hospital, Inc., d/b/a Baptist Hospital East, Nurse Briggs, Nurse Clark, and Nurse Leslie Meneguzzo.[4] The complaint alleged that the combined medical negligence of the named defendants proximately caused the death of Baby Girl Cooper and Phillipsen.

In his answer, Dr. Tabb denied any negligence and asserted several defenses. Among the defenses, Dr. Tabb's answer asserted comparative fault, stating: "Affirmatively and alternatively, Dr. Tabb claims the benefits of the doctrine of comparative fault as defined by Tennessee statutes and interpretive case law." The answer, however, did not name any persons alleged by Dr. Tabb to be at fault in the case.

---

[3] Placental abruption is a complication in pregnancy that occurs when the placental lining has separated from the mother's uterus.

[4] Also named as defendants were Michael D. Wilons, M.D., and his medical group (Memphis Lung Physicians). Dr. Wilons is a pulmonary specialist who consulted with Dr. Austin on Phillipsen's case. These defendants were dismissed in the early stages of the litigation.

Exhaustive discovery and pretrial proceedings ensued. Over sixty depositions were taken, and a special master was appointed to hear the numerous discovery disputes in the lawsuit. Prior to trial, Cooper identified thirteen experts who would testify in support of his claims. Baptist Memorial Hospital disclosed eight expert witnesses and Dr. Austin disclosed two experts. The two experts designated by Dr. Austin were also named as expert witnesses on behalf of Dr. Tabb. Dr. Tabb disclosed one expert witness in addition to the two designated by he and Dr. Austin.

Trial was scheduled to begin on October 3, 2005. About a month before that, on September 1, 2005, the parties appeared before the trial court for a pretrial conference. At that time, Cooper announced that he had reached a settlement with Dr. Austin and his medical group, and also with Baptist Memorial Hospital and its nurses (collectively, "Settling Defendants"). Cooper's settlement with these defendants left Dr. Tabb and his medical group as the only remaining defendants (collectively, "Dr. Tabb").

In the pretrial conference, immediately after the announcement of the settlement, Dr. Tabb made an oral motion to amend his answer to assert nonparty comparative fault against the Settling Defendants if and when the settlement was finalized. The trial court directed Dr. Tabb to file a written motion to that effect and requested that the parties file briefs on the motion. Accordingly, on September 7, 2005, Dr. Tabb filed a motion for leave to amend his answer to assert comparative fault against the Settling Defendants.

The next day, the trial court conducted a hearing on Dr. Tabb's motion for leave to amend his answer. After considering the arguments of counsel, the trial court denied Dr. Tabb's motion. The trial court noted the age of the case at that point, the proximity to the scheduled trial date, and the fact that Dr. Tabb could have asserted comparative fault against these same parties at an earlier date but chose not to for strategic reasons. It observed that Dr. Tabb's request to assert nonparty comparative fault was well outside the time limitations set forth in a previous scheduling order. Given all of these circumstances, the trial court concluded that permitting the amendment to assert comparative fault against the Settling Defendants was not justified. Therefore, the trial court ruled that Dr. Tabb would not be permitted at trial to assert comparative fault against the Settling Defendants. Subsequently, the trial was continued on the trial court's own motion to January 23, 2006.

On January 20, 2006, the trial court addressed several pre-trial motions filed by the parties. Among other things, Cooper filed a motion to exclude the testimony of expert witnesses designated by Dr. Tabb who would testify about the conduct of the Settling Defendant nurses on the day in question. Cooper argued that, in light of the trial court's ruling precluding Dr. Tabb from asserting comparative fault at trial, the negligence of these defendants was irrelevant, and that any testimony as to their conduct should be excluded. In response, Dr.

Tabb argued that the challenged expert testimony should be permitted as relevant to the issue of causation, not comparative fault. He claimed that the testimony of these expert witnesses was sufficiently limited by the discovery disclosures and their deposition testimony.

Citing ***Snyder v. LTG Lufttechnische***, 955 S.W.2d 252 (Tenn. 1997), and ***Ridings v. Ralph M. Parsons Co.***, 914 S.W.2d 79 (Tenn. 1996), the trial court held that "the law requires that the Defendant [Dr. Tabb] be allowed to talk about the conduct of the nurses and the conduct of Dr. Austin. But [he is not] allowed to talked about either the nurses or Dr. Austin's conduct being in deviation or falling below the standard of care." Thus, the trial court held that the witnesses could not be questioned about "deviation from standard of care," and neither party could "allege in any way that the nurses or Dr. Austin fell below the standard of care . . . or that they were at fault for the injuries or death of [Phillipsen]." The parties were not precluded, however, from asking questions of witnesses regarding the issue of causation.

The jury trial was held from January 23 through February 8, 2006. At trial, Cooper introduced proof intended to show that Dr. Tabb failed to properly monitor Phillipsen's medical status and evolving blood-clotting condition, failed to timely administer blood and blood products to her, and failed to properly treat the underlying cause of her blood-clotting condition, and accordingly that his treatment of Phillipsen fell below the applicable standard of care. In addition, Cooper introduced proof intended to show that Dr. Tabb's medical care fell below the applicable standard of care in that he failed to order a caesarean section. In his defense, Dr. Tabb introduced evidence intended to show that Dr. Austin at all times remained Phillipsen's primary treating physician and that Dr. Austin, therefore, was primarily responsible for her treatment. Dr. Tabb submitted evidence intended to show that he complied with the appropriate standard of care in his role as a consultant to Dr. Austin regarding Phillipsen's care and treatment, and that Dr. Tabb's care and treatment of Phillipsen was not the cause in fact or the proximate cause of her injury or death. All told, some twenty-five witnesses testified, either in person or by deposition. Cooper called five medical expert witnesses to support his claims, and, in addition, submitted the testimony of the other treating physicians by deposition. Dr. Tabb testified in his own behalf, and also submitted the testimony of three medical experts, one obstetrician and two maternal-fetal specialists.

At the conclusion of the evidence, the jury deliberated for two days. On February 8, 2006, the jury returned a verdict in favor of Dr. Tabb. The jury verdict form presented to the jury asked the following question: "Do you find the Defendant, Dr. THOMAS N. TABB/PERINATAL ASSOCIATES, P.C., to be at fault?" The jury was given the option of choosing "yes" or "no." The jury simply checked "no" on the verdict form. On February 17, 2006, the trial court entered a judgment on the verdict.

## Post-Trial Proceedings

On March 15, 2006, Cooper filed a motion for a new trial, raising several alleged errors. On July 6, 2006, the trial court held a hearing on Cooper's motion for a new trial. Subsequently, the trial court issued an oral ruling granting the motion for a new trial. The trial judge explained:

> It appears to the Court that the George versus Alexander case [*George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996)] is directly on point. It's unfortunate that I didn't have this case pointed out to me before we spent almost three weeks at trial time. But in any event, it was err[or] on the part of the Court to rule as the Court did.
>
> And frankly, in looking at all the evidence in this case, I must disagree with the verdict of the jury. It appears to me that what the jury did was look at what the jury had to look at, based on the Court's ruling; and found, in my opinion, that they weren't willing to find the Defendant, the remaining Defendant, Dr. Tabb, total at fault in this case. He probably had some fault, but I don't know that his fault was total. I suppose I agree with the jury to that extent, that he wasn't totally responsible; but he certainly had some culpability in the death of the decedent, based on the evidence that was introduced in the case. And so for those reasons, I will grant the Plaintiff's motion, grant a new trial. . . .
>
> Since I found that the — that I disagree with the verdict of the jury and the verdict is against the weight of the evidence, I think I need to transfer this case to another judge to conduct a new trial. So that's what we'll do.

On August 22, 2006, the trial court entered a written order virtually identical to its oral ruling granting a new trial:

> The Court holds that *George v. Alexander*[, 931 S.W.2d 517 (Tenn. 1996),] is directly on point, and the Court erred in ruling as the Court did. The Court finds that after looking at all the evidence in this case, the Court must disagree with the verdict of the jury and the Court, as thirteenth juror, sets aside the verdict of the jury. The Court finds that Dr. Tabb had some culpability in the death of the decedent, based upon the evidence that was introduced in this case, and therefore the Court sets aside the jury's verdict and grants the Plaintiff's Motion for a New Trial. The Court finds that since it disagrees with the verdict of the jury and the verdict is against the weight of the evidence, the Court will transfer this case to another judge to conduct a new trial.

Thus, the trial court made two rulings. First, it held that it had erroneously failed to follow *George v. Alexander* as it related to certain unspecified evidence.[5] Secondly, pertinent to this appeal, the trial court stated that it disagreed with the jury's verdict, based on its review of "all the evidence in this case" sitting as the thirteenth juror. The trial court concluded that Dr. Tabb "certainly had some culpability in the death of the decedent." On this basis, the trial court ordered a new trial. Accordingly, the case was transferred from Division IX of the Circuit Court to Division II, the Honorable James Russell presiding, for a new trial.[6]

On September 21, 2006, Dr. Tabb filed a motion for permission to seek an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.[7] Judge Russell granted permission for the appeal.[8] On December 13, 2007, this Court issued an order declining to grant permission for the interlocutory appeal.

On July 16, 2008, in the wake of the appellate court's refusal to permit an interlocutory appeal, Dr. Tabb filed a motion in Judge Russell's court to reconsider and vacate Judge Childers' order granting a new trial. In the motion, Dr. Tabb asserted that the jury's defense

---

[5]Judge Childers did not fully explain how his evidentiary rulings would have differed had he been apprised of the *George v. Alexander* case prior to the trial. Because he cited it in connection with granting Cooper's motion for a new trial, we presume that he interpreted *George v. Alexander* as requiring a further restriction on Dr. Tabb's ability to present evidence regarding the Settling Defendants' role in the events at issue.

[6]Rule 59.06 of the Tennessee Rules of Civil Procedure provides that, if a new trial is granted "because the verdict is contrary to the weight of the evidence, upon the request of either party the new trial shall be conducted by a different circuit judge or chancellor."

[7]A litigant has a right to appeal a final judgment. *See* Tenn. R. App. P. 3. In the absence of a final, appealable judgment, a litigant may appeal an interlocutory order by obtaining permission to appeal from both the trial court and the appellate court, provided certain criteria are met. *See* Tenn. R. App. P. 9; *see also* Tenn. R. App. P. 10 (no permission from trial court required under this rule).

[8]Judge Russell wrote a lengthy memorandum opinion and order granting Dr. Tabb's motion for permission to file an interlocutory appeal. In it, he explained the reasons for his "sincere" belief that Judge Childers erred in denying Dr. Tabb's motion to amend his answer to assert comparative fault as to the Settling Defendants. He distinguished *George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996), from the case at bar, noting that, in *George*, the defendant had not pled comparative fault in his answer and sought to amend to assert comparative fault against a nonparty. In the case at bar, Judge Russell observed, Dr. Tabb pled comparative fault generally, but did not need to specifically name his co-defendants because they would be listed on the jury verdict form. He noted that Dr. Tabb moved to amend his answer as soon as he learned that the other defendants had settled and that, consequently, he would be the "last man standing" at trial. Thus, Judge Russell indicated that, if the case were retried in his court, he would likely permit Dr. Tabb to submit more evidence of the fault of the Settling Defendants, not less. Consequently, in light of the defense verdict in Dr. Tabb's favor in the first trial under Judge Childers' evidentiary rulings, Judge Russell felt it would be unjust to put the parties through another trial.

verdict was supported by the evidence. On February 5, 2009, rather than addressing the merits of Dr. Tabb's motion to reconsider, Judge Russell transferred the case back to Judge Childers, to enable Judge Childers to reconsider his own order granting a new trial.[9]

On September 25, 2009, Judge Childers conducted a hearing on Dr. Tabb's motion to reconsider. At the hearing, Dr. Tabb argued that, in considering Cooper's motion for a new trial, the trial court erroneously applied comparative fault principles, when the parties and the jury had been prohibited from doing so. In response, Cooper argued that, once a trial court expresses dissatisfaction with a jury verdict in its role as thirteenth juror, and sets aside the verdict on that basis, that decision should not be revisited.

At the conclusion of the hearing, Judge Childers issued an oral ruling in favor of Dr. Tabb. He indicated that he clearly recalled his previous rulings on whether to permit Dr. Tabb to amend to assert comparative fault against the Settling Defendants:

> I didn't think it was fair for the — for the defendant to hold back until the eve of trial after the other defendants settled out and then come in and allege fault when they hadn't — he hadn't alleged fault . . . with specificity before then. And I didn't think it was fair to let them do that. Although, under the circumstances, . . . I didn't think the jury should try this case in a vacuum, and so they had to hear all the facts and circumstances, including the conduct of the then settled defendants who were — who then became non-parties on the issue of cause [in] fact as opposed to proximate cause or legal cause.
> And so, we gave the jury the choice of either finding the defendant, remaining defendant, Dr. Tabb, 100 percent at fault or zero at fault.

Judge Childers then reversed his previous ruling on Cooper's motion for a new trial. He first stated that he had reread the *George v. Alexander* case and concluded that he had erred in granting a new trial on the basis of that case.[10] He implied possible misgivings about his refusal to permit Dr. Tabb to amend his answer to assert comparative fault against the Settling Defendants and indicated that this ruling had led to the jury being given an "all or nothing"

---

[9]We note that, while transferring the case back to the original trial judge for reconsideration of the order granting a new trial may be "best practice," it does not appear to be required under the rules.

[10]Judge Childers noted that, in *George v. Alexander*, the defendant sought to allege comparative fault against nonparties who had never been made parties to the litigation, while in the case at bar, Dr. Tabb sought to allege comparative fault against defendants who had settled. He then stated, "I probably was in error in not letting the defendant amend the answer." However, he then added, "[s]trictly speaking, I didn't think they were entitled to, I still don't think they were entitled to under those circumstances asking the Court to amend on the eve of trial."

choice on Dr. Tabb's culpability. Thus, the jury was not permitted to compare fault. Consequently, he said, the trial court, acting as thirteenth juror, was required to abide by the same limitation. In reviewing his prior ruling on Cooper's motion for a new trial, Judge Childers concluded that he had in fact compared fault:

So [the jury verdict form] gave the jury two alternatives. And that was either to find Dr. Tabb 100 percent at fault or zero at fault. And even though the jury may have wanted to find some fault on the part of Dr. Tabb, under the Court's instructions they couldn't. Because if the jury found that Dr. Tabb was partially at fault but not fully at fault, they didn't have any choice. It was either full fault or none. And the jury chose none in this case. And what I did, the defendant's right, what I did is do precisely what I told the jury they couldn't do, and that's to compare the fault. And that's the basis on which I set aside the verdict being against the one that wasn't.

And I looked at that again very closely, I reviewed the case law, and I don't think I had the authority to do that. Even though, again, if the defendant had been able to compare fault against the other parties it may have been a totally different situation, we would have had comparative fault under those circumstances. But the fact is, we didn't. We didn't have comparative fault.

And yet, in my reviewing the evidence independently as the 13th juror as I'm required to do under the law, I compared fault. It's clear from the transcript what I did and from the order. And so I [erred]. And I [have] a chance, even though it's late in the game, to correct that error. And that's what I think I have to do to correct the error. Because contrary to what the order says, *George versus Alexander* is not directly on point. It's distinguished because of the facts in the case before the Court. . . .

And again, over the plaintiff's objection I would not allow the defendant to do that and that left the jury . . . with the alternatives of all or none. The jury chose none. And I think under the facts and circumstances in this case, that was an appropriate verdict. I find the weight of the evidence preponderates under those circumstances in favor of the jury's verdict as the 13th juror.

So you all draw an order granting the Motion to reconsider, denying the motion for a new trial. Take it up to the Western Section and let them see what we need to do with it. Because . . . if the case is tried again, in my view, it's got to be tried exactly the same way it was tried the first time. And that is, to allow the defendant to compare the conduct, not the fault, but the conduct of the now non-parties, the settled defendants. And so, it seems to me you're faced with the very same circumstances if we try this case again. So I really think, frankly, it would be an exercise in futility in trying this case again. So let the Court of

Appeals look at it. If they say I'm wrong, then we'll come back and try it again. If not, then that will be the end of it.

On October 15, 2009, the trial court entered a written order granting Dr. Tabb's motion to reconsider and denying Cooper's motion for a new trial. The order attached a transcript of the oral ruling and incorporated it by reference. Cooper filed a motion to set aside the order granting Dr. Tabb's motion to reconsider. On October 16, 2009, the trial court entered an order denying this motion. Cooper now appeals.[11]

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Cooper raises the following issues:

> 1. Whether the trial court erred when, three years after the trial, the court reinstated the jury's verdict and set aside the order granting a new trial?
>
> > A. Whether the trial court's order granting Cooper's motion for a new trial expressed dissatisfaction and disagreement with the jury's verdict and thus necessitated a new trial?
> >
> > B. Whether the trial court had jurisdiction to reconsider the motion to reinstate the jury's verdict and set aside the order granting a new trial?
> >
> > C. Whether Dr. Tabb's motion to reconsider was untimely under Rule 60?
>
> 2. Whether the trial court erred in allowing blame-shifting facts into evidence when comparative fault was not pled?
>
> 3. Whether the trial court erred in allowing Dr. Tabb to call experts he did not properly disclose in his Rule 26 disclosures?
>
> 4. Whether the trial court erred in the application of Rule 32.01 by denying Cooper the use of testimony from deponents no longer a party to the lawsuit?

---

[11]On October 30, 2009, Cooper filed his notice of appeal. On the same day, Cooper filed an "Amended Motion For a New Trial," raising an additional basis on which he claimed a new trial was warranted. This motion was not addressed by the trial court. Cooper's late-filed motion does not affect the finality and appealability of the orders being appealed herein.

5. Whether the allegations of attorney misconduct rendered the jury's verdict unreliable?

Thus, Cooper raises procedural and substantive challenges to the trial court's decision to reinstate the jury's verdict. He argues that the motion to reconsider the order granting a new trial was untimely, and that the trial court lacked jurisdiction to reconsider the order. He also challenges the trial court's ability to approve the jury's verdict when, in its initial decision, the court expressed dissatisfaction with the verdict. In the alternative, should this Court affirm the trial court's reconsideration and ultimate denial of Cooper's motion for a new trial, Cooper challenges various rulings made by the trial court throughout the course of the trial.

In general, when a trial court denies a motion for a new trial and approves the jury verdict, the scope of appellate review is limited to whether the record contains any material evidence to support the verdict. Tenn. R. App. P. 13(d). However, in this case, the trial court first granted a new trial, and then upon reconsideration reversed its initial decision and approved the jury verdict. As a threshold issue, we must address whether the trial court could revisit its grant of a new trial; this presents a question of law, reviewed *de novo* with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). After addressing this initial issue, we will address the remaining issues as appropriate and will set forth the standard of review in our discussion below.

**ANALYSIS**

**Timeliness and Jurisdiction**

We first address Cooper's procedural challenges to the trial court's decision. Initially, Cooper argues that the trial court was without jurisdiction to reconsider its initial order granting a new trial. He notes that, under Rule 59.01 of the Tennessee Rules of Civil Procedure, a motion to reconsider a previously decided motion for a new trial is "not authorized and will not operate to extend the time for appellate proceedings." Tenn. R. Civ. P. 59.01. He argues that a motion to reconsider one of the motions listed in Rule 59.01, including a motion for a new trial, is "not allowed," citing **Daugherty v. Lumbermen's Underwriting Alliance**, 798 S.W.2d 754, 757-58 (Tenn. 1990), and **Tenn. Farmers Mut. Ins. Co. v. Farmer**, 970 S.W.2d 453, 455 n.1 (Tenn. 1998). By transferring the case to another division after granting Cooper's motion for a new trial, Cooper claims, "the trial court voluntarily relinquished jurisdiction immediately . . ., pursuant to Rule 59.06."

In the alternative, Cooper argues that, even if the trial court had jurisdiction to reconsider its order granting a new trial, Dr. Tabb's motion to reconsider the decision, filed over two years later, was untimely under Rule 60 of the Tennessee Rules of Civil Procedure. Under Rule 60,

-11-

a party may file a motion for relief from a "final judgment, order or proceeding" within "a reasonable time" or, if the motion for relief is based on fraud or mistake, "not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02. Cooper recognizes that his arguments are based on the premise that the trial court's August 2006 order granting a new trial was a final order. Without citation to authority, he asserts: "There is no question that the Order granting a new trial was a final judgment on the 2006 trial." Therefore, Cooper maintains that Dr. Tabb was required to seek reconsideration of the trial court's order granting a new trial within the time constraints provided in Rules 59 or 60 of the Tennessee Rules of Civil Procedure.

In response, Dr. Tabb acknowledges that an order *denying* a motion for a new trial is a final order, but he argues that an order *granting* a new trial is interlocutory in nature and, therefore, is subject to modification by the trial court any time before a final order is entered. Citing **Benson v. Fowler**, 306 S.W.2d 49 (Tenn. Ct. App. 1957), Dr. Tabb asserts that an order granting a motion for a new trial "is subject to the control of the trial judge, and may be modified and set aside by him at any time prior to its becoming final." **Benson**, 306 S.W.2d at 54 (quoting **Arkansas Fuel Oil Co. v. Tanner**, 260 S.W.2d 286, 288 (Tenn. 1953)). Therefore, he claims, the trial court had jurisdiction to adjudicate his motion to reconsider, even where the motion to reconsider was filed years after entry of the order.

It is well-settled that an "order granting a new trial is not a final judgment and is not appealable as of right." **Evans v. Wilson**, 776 S.W.2d 939, 941 (Tenn. 1989) (citing **Panzer v. King**, 743 S.W.2d 612, 616 (Tenn. 1988)).[12] **See also Davis v. Flynn**, No. E1999-00421-COA-R3-CV, 2000 WL 807613, at *1 (Tenn. Ct. App. June 21, 2000). This is because an order granting a new trial does not end the litigation; rather, it "ensure[s] that further proceedings [will] follow." **State v. Miller**, No. 02C01-9708-CC-00300, 1998 WL 902592, at *3 (Tenn. Crim. App. Dec. 29, 1998); **see Blackburn v. CSX Transp., Inc.**, No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *4 (Tenn. Ct. App. May 30, 2008) (recognizing that "an order granting a new trial is not a final order" and that it is "interlocutory"). This is implicitly recognized in Rule 4 of the Tennessee Rules of Appellate

---

[12]**Panzer v. King** was later abrogated on another point of law. **See Lacy v. Cox**, 152 S.W.3d 480 (Tenn. 2004). We note as well that the **Panzer** opinion contains problematic language referring to the "vested right" of the defendant "of appellate review of the trial judge's action in granting plaintiff a new trial." **Panzer**, 743 S.W.2d at 615. This does not mean that the order granting a new trial is a final, appealable judgment. Rather, under the facts in **Panzer**, the Court was referring to the defendant's right to *ultimately* obtain review of the order granting a new trial as being adversely impacted by the plaintiff's non-suit. **See Blackburn v. CSX Transp., Inc.**, No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *4 (distinguishing between "appealability" and "reviewability" of order granting new trial). Indeed, the **Panzer** Court states that "neither grant of a new trial by the trial judge nor the denial of the motion for non-suit was a final judgment." **Panzer**, 743 S.W.2d at 616.

Procedure, insofar as Rule 4 provides that the thirty-day time limitation for filing an appeal runs from the date of an "order *denying* a new trial or *granting or denying* any other such [post-judgment] motion." Tenn. R. App. P. 4(b) (emphasis added); *see also Turner v. Jordan*, 957 S.W.2d 815, 817 (Tenn. 1997) (noting that an appeal from a grant of a new trial must be by permissive interlocutory appeal).

Thus, the grant of a new trial meant that the case remained in the bosom of the trial court.[13] It follows, then, that the order granting a new trial remained subject to revision by the trial court. "It is a well-settled rule in this state that any order or judgment of the Circuit Court is subject to the control of the trial judge and may be modified or set aside by him *at any time* before becoming final." *Newport Hous. Auth., Inc. v. Hartsell*, 533 S.W.2d 317, 320 (Tenn. Ct. App. 1975) (emphasis added); *see* Tenn. R. App. P. 3(a) (stating that any order adjudicating fewer that all claims of all parties is not final and "is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties"). Therefore, inasmuch as an order granting a new trial is not a final order and is interlocutory in nature, it remains "subject to the control of the trial judge, and may be modified and set aside by him at any time prior to its becoming final." *Benson*, 306 S.W.2d at 158 (quoting *Arkansas Fuel Oil Co. v. Tanner*, 260 S.W.2d 286, 288 (Tenn. 1953)); *see also Miller*, 1998 WL 902592, at *3 (stating that it was permissible for the trial court to reverse its order granting a new trial four months later, because the order granting a new trial was not a final order). Moreover, because the order granting a new trial is not a final order, Rules 59 and 60 of the Tennessee Rules of Civil Procedure, and the time constraints contained in these rules, are not applicable. *See Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000) (noting that Rule 59 applies only to final judgments); *Alman Constr. Co. v. Tenn. Dep't of Labor*, No. 01-A-019111CH00420, 1992 WL 151434, at *5 (Tenn. Ct. App. July 2, 1992) (noting that Rule 60, by its terms, applies only to final orders).

Here, the August 2006 order granting a new trial was not a final order, and no order otherwise resolving the case had been entered when Dr. Tabb filed his July 2008 motion to reconsider. Therefore, we cannot say that the mere passage of time deprived the trial court of jurisdiction to reconsider its order granting Cooper a new trial.[14]

---

[13] We must respectfully reject Cooper's assertion that the trial court "relinquished" jurisdiction by transferring the case to another division after it granted Cooper's motion for a new trial. The Shelby County Circuit Court retained jurisdiction over the case, even if it had been transferred to another division of the Circuit Court.

[14] The cases upon which Cooper relies in support of his argument are not inconsistent with this conclusion. In *Daughtery*, the Tennessee Supreme Court held that the filing of a motion to reconsider the *denial* of a motion for a new trial does not extend the time for filing a notice of appeal. *See Daughtery*, 798 S.W.2d at

(continued...)

**Motion for a New Trial**

Having held that the trial court was permitted to revisit its August 2006 decision granting a new trial, we look next at whether the trial court erred in performing its role as the "thirteenth juror."

Cooper argues that the trial court erred in reversing its initial decision to grant a new trial and in ultimately denying his motion for a new trial because, in its initial decision, the trial court expressed dissatisfaction and disagreement with the jury's verdict. If a trial court is dissatisfied with the jury's verdict, Cooper argues, it is required to grant a new trial and "cannot refuse it to save time or avoid the expense of another trial." *Wakefield v. Baxter*, 297 S.W.2d 97, 99 (Tenn. Ct. App. 1956). Cooper further claims that, even if the trial court were permitted to "unring the bell" of dissatisfaction with the jury's verdict as set out in the order granting a new trial, the language in the second order upon reconsideration does not clearly indicate that the trial court was satisfied with the verdict. Therefore, he argues, this Court must order a new trial.

In response, Dr. Tabb claims that Cooper has improperly interpreted the trial court's orders, and that the trial court did not, as Cooper contends, express dissatisfaction with the jury verdict. Rather, he argues, the trial court initially granted the motion for a new trial on an incorrect legal basis, using comparative fault principles when the jury was prohibited from considering such principles in making its decision. In other words, according to Dr. Tabb, the trial court "misinterpreted its role as the thirteenth juror." The trial court candidly acknowledged its error, Dr. Tabb claims, and corrected it by reversing its earlier ruling and reinstating the jury verdict. Focusing on the trial court's second order upon reconsideration, Dr. Tabb maintains that an appellate court is to review only whether the trial court expressed dissatisfaction with the jury's verdict, citing *Wakefield v. Baxter*, 297 S.W.2d 97, 99 (Tenn. Ct. App. 1956), and *Blackburn*, 2008 WL 2278497, at *7. In the second order, Dr. Tabb notes, the trial court did not express dissatisfaction with the jury's verdict. Therefore, Dr. Tabb maintains, the trial court properly exercised its duty to act as thirteenth juror, and this Court should go on to consider whether the jury's verdict in favor of Dr. Tabb was supported by material evidence.

---

[14](...continued)
757. This is inapposite, of course, because an order *denying* a motion for a new trial is a final, appealable order. *See* Tenn. R. App. P. 4(b). In *Farmer*, the Court dealt with a similar issue and relied on *Daughtery* in noting that a motion to reconsider a previously decided post-trial motion would not extend the time for filing a notice of appeal. *Farmer*, 970 S.W.2d at 455 n.1. The time for filing a notice of appeal is not relevant in this instance, where the order to be reconsidered is interlocutory, not final and appealable.

A jury verdict is not valid until it is approved by the trial judge. ***Washington v. 822 Corp.***, 43 S.W.3d 491, 494 (Tenn. Ct. App. 2000). When faced with a motion for a new trial asserting that the verdict is against the weight of the evidence, the trial court is called upon to independently weigh the evidence and determine whether it preponderates in favor of or against the verdict. ***Woods v. Herman Walldorf & Co.***, 26 S.W.3d 868, 873 (Tenn. Ct. App. 1999) (quoting ***Shivers v. Ramsey***, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996)); ***Witter v. Nesbit***, 878 S.W.2d 116, 121 (Tenn. Ct. App. 1993); ***Grissom v. Metro. Gov't of Nashville & Davidson County***, 817 S.W.2d 679, 684 (Tenn. Ct. App. 1991). This role has been likened to acting as a thirteenth juror:

> The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise-as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside.

***Davidson v. Lindsey***, 104 S.W.3d 483, 488 (Tenn. 2003) (quoting ***Cumberland Tel. & Tel. Co. v. Smithwick***, 79 S.W. 803, 804 (Tenn. 1904)). The trial judge must be independently satisfied with the verdict; if the trial judge is dissatisfied with the verdict, the verdict must be set aside. ***Holden v. Rannick***, 682 S.W.2d 903, 905 (Tenn. 1984).

In addressing a motion for a new trial, the trial court has such broad discretion that it is not bound to give reasons for its action in granting or denying a new trial based on the preponderance of the evidence. ***See James E. Strates Shows, Inc. v. Jakobik***, 554 S.W.2d 613, 615 (Tenn. 1977); ***Blackburn***, 2008 WL 2278497, at \*4. Indeed, when a trial judge approves the verdict without comment, the appellate court will presume that the trial judge has adequately performed his function as the thirteenth juror. ***Holden***, 682 S.W.2d at 905 (citing ***Centr. Truckaway Sys. v. Waltner***, 253 S.W.2d 985, 991 (Tenn. Ct. App. 1952)).

When, however, the trial judge "comments as to the reasons for his or her decision, '[the appellate] court looks to them only for the purpose of determining whether he passed upon the issues and was satisfied or dissatisfied with the verdict thereon.' " ***Davidson***, 104 S.W.3d at 488 (quoting ***Cumberland Tel.***, 79 S.W. at 805); ***see also Mize v. Skeen***, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971) (citing ***Gordon's Trans., Inc. v. Bailey***, 294 S.W.2d 313, 320-21

(Tenn. Ct. App. 1956); ***Benson v. Fowler***, 306 S.W.2d 49, 55 (Tenn. Ct. App. 1957)).  We do not reweigh the evidence or review the comments to see if we agree with the court's reasoning, but rather, we look to see if the trial judge reviewed the evidence and was satisfied or dissatisfied with the verdict.  ***Heath v. Memphis Radiological Prof'l Corp.***, 79 S.W.3d 550, 554 (Tenn. Ct. App. 2001).  Where the statements made or reasons given in ruling on the motion for new trial indicate that the trial court was actually dissatisfied with the verdict, the duty of the appellate court is clear:

> The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict.

***Id.*** (quoting ***Cumberland Tel.***, 79 S.W. at 804).  Thus, "[i]f it appears from any reasons assigned or statements made in passing on a motion for a new trial that the trial judge was not actually satisfied with the verdict, it is the duty of the appellate courts to grant a new trial, the material evidence rule notwithstanding." ***Mabey v. Maggas***, No. M2006-02689-COA-R3-CV, 2007 WL 2713726, at *6 (Tenn. Ct. App. Sept. 18, 2007).

This case presents unusual circumstances in that the trial judge made comments and gave reasons for his initial decision to grant Cooper's motion for a new trial shortly after the trial, and he also made comments three years later in his decision to reconsider and deny the motion for a new trial.  In his arguments on appeal, Cooper urges this Court to focus on the trial judge's 2006 comments made when he granted Cooper's request for a new trial.  In contrast, Dr. Tabb focuses on the trial judge's 2009 comments made upon reconsideration.  On appeal, however, we are required to examine the trial court's comments as a whole.  ***See Heath***, 79 S.W.3d at 555-56 (citing ***Holden***, 682 S.W.2d at 905-06 ("the Supreme Court made it clear that the comments of the trial judge should be considered as a whole.")); ***see also*** STEPHEN W. FELDMAN, 22 *Tenn. Prac. Contract Law and Practice* § 12:53 (2010).  Therefore, we look at the 2006 and the 2009 comments together, focusing on whether the trial judge "passed upon the issues, and was satisfied or dissatisfied with the verdict." ***Davidson***, 104 S.W.3d at 488.

From our review of the trial judge's 2006 oral ruling, we find no "comments which indicate that he has misconceived his duty or clearly has not followed it." ***Heath***, 79 S.W.3d at 554 (citing ***Miller v. Doe***, 873 S.W.2d 346, 347 (Tenn. Ct. App. 1993)).  Therefore, we focus on

-16-

whether the trial court's comments indicate that the trial judge was dissatisfied with the verdict of the jury.

In 2006, the trial judge gave two reasons for his decision to grant Cooper's request for a new trial. First, based on the ***George v. Alexander*** case, apparently brought to the trial judge's attention after the trial, the trial judge expressed concern about a key evidentiary ruling. Second, and most important to this appeal, the trial judge unequivocally expressed dissatisfaction with the jury's verdict:

> And frankly, in looking at all the evidence in this case, *I must disagree with the verdict of the jury*. It appears to me . . . that they weren't willing to find . . . Dr. Tabb, total at fault in this case. . . . I suppose I agree with the jury to that extent, that he wasn't totally responsible; *but he certainly had some culpability in the death of the decedent*, based on the evidence that was introduced in the case.

Thus, the trial judge's oral comments in 2006 clearly convey dissatisfaction with the jury's verdict that Dr. Tabb had no fault. These comments were reiterated in the written order entered in 2006.

In 2009, upon reconsideration, the trial judge noted that the jury was not given the option of comparing Dr. Tabb's fault with the fault of other persons, and he indicated that, in reviewing the evidence, he "compared fault." He characterized this as an error, and then discussed the jury verdict:

> [T]hat left the jury . . . with the alternatives of all or none. The jury chose none. And I think under the facts and circumstances in this case, that was an appropriate verdict. I find the weight of the evidence preponderates *under those circumstances* in favor of the jury's verdict as the 13th juror. . . . [I]t seems to me you're faced with the very same circumstances if we try this case again. So I really think, frankly, it would be an exercise in futility in trying this case again.

While the trial judge's 2009 ruling includes a finding that the weight of the evidence preponderates in favor of the jury's verdict, this appears to be essentially a "pro forma approval of the verdict" which must be read in the context of all of his comments. ***Sherlin v. Roberson***, 551 S.W.2d 700, 701 (Tenn. Ct. App. 1976). The gist of the trial judge's remarks appears to be that, given the somewhat untenable choice of finding that Dr. Tabb had total fault or no fault, the choice by the jury was an "appropriate" one, and a similar result would ensue from a new trial.

A somewhat similar situation was faced by our Supreme Court in ***James E. Strates Shows, Inc. v. Jakobik***, 554 S.W.2d 613 (Tenn. 1977).  In ***Jakobik***, the jury rendered a verdict in favor of the defendant, and the plaintiff filed a motion for a new trial.  In the order granting the motion, the trial judge expressed dissatisfaction with the verdict.  ***Jakobik***, 554 S.W.2d at 614.  Two months later, the trial court agreed to reconsider the order granting a new trial.

Upon reconsideration, the trial court entered an order reversing its prior decision and denying the motion for a new trial.  ***Id.*** at 615.  It explained that its earlier dissatisfaction with the jury's defense verdict "was actually a dissatisfaction with the proof as presented by the plaintiff."  ***Id.***  The trial judge stated that "there was evidence to support the verdict of the jury" and observed that he could not "say that the verdict was unreasonable."  ***Id.***

The Supreme Court noted that the trial court's first order "unequivocal[l]ly expressed dissatisfaction with the jury verdict."  ***Id.*** at 616.  It found that the second order upon reconsideration indicated that the trial court did not weigh the evidence, but merely determined that there was evidence to support the verdict.  ***Id.***  Under those circumstances, the Court held, it was required to remand the case for a new trial.  ***Id.***

In the case at bar, the trial court's 2009 order does not indicate that the trial judge undertook to reconsider the evidence presented in the 2006 trial, or that the trial judge decided that he in fact agreed with the jury's verdict in favor of Dr. Tabb.  Instead, the trial judge stated only that the jury's verdict was "appropriate" in light of the all-or-nothing choice it was given, and that a new trial would be "an exercise in futility."  These remarks indicate that the trial judge, in the 2009 reconsideration of the order granting a new trial, may have "disassociated himself from the deliberative process" and deferred to the verdict of the jury.  ***Sherlin***, 551 S.W.2d at 701.  Moreover, as noted by Cooper, a trial court cannot refuse to grant a new trial because it would avoid a waste of time and expense.  ***See Wakefield***, 297 S.W.2d at 99.

Most importantly, after clearly stating in 2006 that he disagreed with the jury's defense verdict, the trial judge upon reconsideration in 2009 does not state that he agrees with the jury's finding that Dr. Tabb was not at fault.  Instead, considering the 2006 and 2009 rulings together, we are left with the impression that, although the trial judge believed that Dr. Tabb had "some culpability," contrary to the jury's verdict, he later chose to defer to the jury in light of the all-or-nothing choice given to it.

Dr. Tabb urges this Court to view the trial court's initial disagreement with the jury's verdict as essentially vitiated by the trial judge's later recognition that its dissatisfaction was a product of comparing fault.  This we cannot do.  We do not review the trial court's comments to see if we agree with its reasoning; rather, we look to them only to see if the trial judge passed on the issues and was satisfied or dissatisfied with the verdict.  ***Davidson***, 104 S.W.3d at 488;

*Heath*, 79 SW.3d at 554. Where it appears "from statements made by the circuit judge . . . that he was really not satisfied with the verdict, it becomes the duty of this court . . . to do what the circuit judge should have done; that is, to grant a new trial." ***Cumberland Tel.***, 79 S.W. at 804. Under these circumstances, we must respectfully reverse the trial court's denial of Cooper's motion for a new trial and grant a new trial in this case.

The other issues raised in this appeal relate to evidentiary rulings and allegations of attorney misconduct at trial. In light of our holding above, we decline to address these issues at this juncture.[15]

**CONCLUSION**

The decision of the trial court is reversed and the cause is remanded for a new trial. Costs on appeal are to be taxed to Appellees Thomas N. Tabb, M.D., Thomas N. Tabb, M.D., P.C., and Perinatal Associates, P.C., for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE

---

[15]In declining to address the remaining issues, we do not intend to preclude the parties from raising these or other issues decided by the trial court in any subsequent appeal. ***See Freemon Indus. LLC v. Eastmon Chem. Co.***, 227 S.W.3d 561, 567 (Tenn. Ct. App. 2006) (noting that, once a case is remanded and jurisdiction is reinvested in the trial court after an appeal, "the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified").