# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
April 22, 2014 Session

## DERECK CRUZ LEGENS v. BOBBY LECORNU, ET AL.

### Direct Appeal from the Chancery Court for Obion County
### No. 30136    William Michael Maloan, Chancellor

### No. W2013-01800-COA-R3-CV - Filed June 26, 2014

This is an appeal from a bench trial in a suit over the sale of a used vehicle.  The trial court originally ruled in favor of the seller-defendants, finding that the plaintiff-buyer failed to meet his burden of proving fraud or misrepresentation in the sale of the vehicle.  The court found that defendant-sellers had violated one subsection of the Tennessee Consumer Protection Act, but that plaintiff-buyer had failed to prove any actual damages, so the trial court dismissed the complaint.  Upon considering the plaintiff-buyer's motion to alter or amend, the trial court changed its original decision and found that the defendant-sellers had engaged in fraud, and the court rescinded the sale of the vehicle.  Upon considering plaintiff-buyer's second motion to alter or amend, the trial court clarified its ruling and awarded attorney's fees to the plaintiff-buyer.  Both parties appeal.  For the following reasons, we reverse the trial court's decision, reinstate its original ruling, and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., concurred separately, and J. STEVEN STAFFORD, J., joined.

James T. Powell, Union City, Tennessee, for the appellant, Bobby Lecornu, et al

James H. Bradberry, Dresden, Tennessee, for the appellee, Dereck Cruz Legens

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

On July 9, 2009, Dereck Legens ("Plaintiff") purchased a 2002 Chevrolet Avalanche from Bobby and Larry Lecornu ("Defendants") at their used car business called Midtown Motors, located in Union City, Tennessee. On October 17, 2012, Plaintiff filed this lawsuit against the Defendants, d/b/a Midtown Motors, alleging that the Defendants had engaged in fraud and misrepresentation in connection with the sale by providing Plaintiff with incorrect information regarding the actual mileage of the vehicle. Plaintiff alleged that the Defendants' fraud and misrepresentation constituted grounds for rescission of the sale and return of the vehicle and purchase price. Additionally, Plaintiff asserted that Defendants had violated the Tennessee Consumer Protection Act, entitling him to an award of treble damages and attorney's fees. Defendants filed an answer, basically alleging that Plaintiff was made aware of the discrepancy with the vehicle's mileage at the time of the sale.

A bench trial was held on May 17, 2013. Plaintiff testified that he visited Midtown Motors and test drove the vehicle on July 8, 2009, and that he returned to the lot and purchased the vehicle the following day, for $10,995. Plaintiff testified that the odometer on the dashboard of the vehicle read 110,941 miles, but he said he never discussed the issue of the vehicle's mileage with anyone at Midtown Motors. Plaintiff testified that he drove the vehicle for about two years after the sale, and during that time, he experienced problems with the vehicle being "rusted." Plaintiff testified that he eventually decided to trade the vehicle and purchase another one, and when he visited a dealership to inquire about doing so, he learned from a Carfax report that there was a discrepancy with the vehicle's mileage. According to Plaintiff, the Carfax report contained an entry from August 2008, which listed 174,857 miles on the vehicle at that time. Again, the vehicle's odometer read 110,941 miles when Plaintiff purchased it in July 2009.

Plaintiff testified that when he purchased the vehicle from Midtown Motors, he executed a document entitled "Power of Attorney for Vehicle Transactions," in order to have the title and tags transferred to his new vehicle. This document named Kathy Lofton, an employee of the Weakley County Clerk's Office, as Plaintiff's attorney in fact and authorized her to sign his name on all documents necessary for any title and registration transactions for the vehicle. Plaintiff testified that he left this document at Midtown Motors on the day of the sale so that it could be forwarded by them to the clerk's office. At trial, Plaintiff acknowledged that the power of attorney document was notarized, but he said he did not recall seeing the individual who purportedly witnessed and notarized it, Beverlyn Lecornu, who is Defendant Bobby Lecornu's mother.

Plaintiff was also questioned about another document that was allegedly completed in connection with the sale, entitled, "Assignment of Certificate of Title by Owner." This document listed the vehicle's past odometer readings at the time of previous sales. It stated that when the vehicle was sold to Midtown Motors, its actual mileage, as reflected on the odometer, was 181,071. The document further reflected that at the time of the sale from Midtown Motors to Plaintiff, the odometer reading was 110,941 miles, but a box is checked indicating that "the odometer reading differs from actual mileage" and "is not the actual mileage." The document further states, "WARNING - ODOMETER DISCREPANCY." Defendant Bobby Lecornu signed the document as the licensed dealer selling the vehicle. The document purportedly contains Plaintiff's signature in the box for the signature of the purchaser, but at trial, Plaintiff denied that it was in fact his signature, and he testified that he had never seen this document prior to his involvement with this lawsuit.

Plaintiff was also asked about a document entitled "Buyers Guide," which is the familiar sign in the window of a vehicle stating whether a vehicle is being sold "as is" or with a warranty. Plaintiff did not dispute that he saw the Buyers Guide in the window of the vehicle, but he said he could not recall exactly "what the paper looked like." Plaintiff admitted that he signed the Buyers Guide in a space on the back of the document, acknowledging that he had received a copy. On the front of the Buyers Guide presented at trial, there is a handwritten note that states:

> This truck was sold with true miles unknown
> he was told not actually miles

Beside this handwritten notation is the signature of Defendant Bobby Lecornu, the date of sale, July 9, 2009, and the stamp of the notary, Beverlyn Lecornu, although she did not personally write anything on the document. Plaintiff testified that he did not recall discussing this document with anyone at Midtown Motors, and he did not recall reading the document itself or any handwritten notes on the document. He explained, "I mean, whenever you're buying something like that, it's just like a home. I mean, you sign umpteen papers and you just – I don't read them all personally. I take people's word[.]" Plaintiff testified that there was no one present when he signed these documents other than Mr. Lecornu.

In sum, Plaintiff admitted that he signed the power of attorney document naming Ms. Lofton as his attorney in fact for the transaction, and he admitted to signing the back of the Buyers Guide, although he did not specifically recall the handwritten notation about the vehicle's mileage. Plaintiff denied that he signed or saw the Assignment of Title document listing the vehicle's previous odometer readings.

Ms. Lofton also testified at trial. She had been employed by the Weakley County Clerk's Office for nearly eighteen years. Ms. Lofton testified that she did not sign Plaintiff's name on the Assignment of Title document and that she did not know who did. Ms. Lofton acknowledged that she signed a necessary application document to be submitted to the State of Tennessee on Plaintiff's behalf, but in that instance, she signed "Kathy Lofton POA," not Plaintiff's name.

Defendant Bobby Lecornu testified as well. He had been in the used car business for about twenty years. Mr. Lecornu testified that Midtown Motors purchased the vehicle at an auction about one month prior to the sale to Plaintiff. According to Mr. Lecornu, the odometer was functioning properly when Midtown Motors bought the vehicle, and at that time, there were about 181,000 miles on the vehicle. However, Mr. Lecornu testified that two days after Midtown Motors bought the vehicle, "[t]he speedometer and all the gauges were going crazy on it," so he took the vehicle to a mechanic and ultimately had to replace "the whole unit" on the dashboard.

Regarding the allegedly forged signature on the Assignment of Title document that contained the previous odometer readings, Mr. Lecornu testified that he had "no idea" who signed Plaintiff's name. Mr. Lecornu said he did not witness anyone signing the document in that location, and he said the space for Plaintiff's signature was blank when Midtown Motors forwarded the document to the clerk's office for completion. Regarding who signed the document, Mr. Lecornu said, "I'm assuming [Plaintiff] did because it's his signature." But he went on to say that if Plaintiff denied signing the document, then he would assume that Ms. Lofton, at the county clerk's office, signed Plaintiff's name due to the fact that she was authorized to sign for Plaintiff pursuant to the power of attorney.

Mr. Lecornu testified that he was the one who wrote the handwritten notation on the front of the Buyers Guide, which stated, "This truck was sold with true miles unknown he was told not actually miles." Mr. Lecornu said that his mother, Beverlyn Lecornu, was present when he and Plaintiff executed the document on the date of the sale and she placed her notary stamp on the document. He said he did not know why Ms. Lecornu did not sign and date the document as well, but he noted that the Buyers Guide is not sent to the State; it is maintained in the files at Midtown Motors. Mr. Lecornu explained, "She stamps every one that we have just so we know the customer signed it. It's like federal law now that you have to have them sign these, so we get her to witness them so in case anything like this or anything comes up we have a witness." Basically, Mr. Lecornu said that his mother uses her notary stamp to stamp a document "[s]o she knows she witnessed it."

Mr. Lecornu was also asked about the handwritten notation stating that the truck was sold "with true miles unknown," despite his prior knowledge that the vehicle had at least

180,000 miles on it when Midtown Motors purchased it at auction. Mr. Lecornu explained that the vehicle had been driven during the month since the auction, and as result, the miles truly were unknown at the time of the sale to Plaintiff. Mr. Lecornu insisted that "[Plaintiff] was told of all that upfront, that the mileage was not right, that the speedometer quit working." Mr. Lecornu testified that Plaintiff asked why the price of this vehicle was lower than others he had seen, and Mr. Lecornu informed Plaintiff, "Well, the reason it's priced right is because of the mileage. We had an issue with the speedometer, and it broke after I purchased it, and I fixed it. . . . You know, it works, but the mileage is off. It's not actual." According to Mr. Lecornu, Plaintiff said he "didn't care" and was "fine with that." Mr. Lecornu testified that when he and Plaintiff were completing the paperwork for the sale, he made the handwritten note on the front of the Buyers Guide regarding the mileage discrepancy and "told [Plaintiff] I had to write this out and have him sign it so that – basically to protect me in case anything like this would happen that he couldn't say that we didn't tell him about the mileage, and he agreed and he signed it." In sum, Mr. Lecornu said there was no doubt in his mind that he "definitely" told Plaintiff about the issue with the odometer.

The final witness to testify was Ms. Lecornu, Defendant Bobby Lecornu's mother, and the notary who allegedly witnessed the transactions at issue. Ms. Lecornu testified that she "pretty much" remembered the transaction with Plaintiff but "maybe not absolutely everything" because it had "been a while." Ms. Lecornu said she did recall Mr. Lecornu explaining to Plaintiff that the mileage displayed on the vehicle was not the actual mileage. She also said she witnessed Plaintiff's signatures on the documents, and that she stamped the documents with her notary stamp. She said, "when I stamp this, this lets me know that I witnessed him signing." Ms. Lecornu testified that when she notarizes a document that must be sent in to the State, she completely fills it out by signing her name, writing the date, the county, and state, and the expiration date of her notary. She said when she stamps something for her own records, just to let her know that she witnessed a signature, she does not go into as much detail.

At the conclusion of the trial, the trial judge took the matter under advisement. On June 20, 2013, the trial judge entered a written order finding that Plaintiff failed to carry his burden of proof and that the complaint should be dismissed. After summarizing the testimony at trial, the trial court concluded, "In this case, the proof is clear that the mileage of the subject vehicle was disclosed to the buyer as not being accurate. There is no proof of misrepresentation or fraud etc. or other misconduct to justify rescission of the contract." As for the allegation that Defendants violated the Tennessee Consumer Protection Act, the trial court found Plaintiff "failed to prove the seller misrepresented the vehicle" in order to prove

a violation of Tennessee Code Annotated section 47-18-104(b)(5) and (7).[1]  However, the court found that Plaintiff had proven that Defendants violated section 47-18-104(b)(16) and section 39-14-132(b).[2]  Despite this violation, though, the trial court found that Plaintiff had failed to prove ascertainable damages.  The court noted there was no proof in the record of the difference in the value of the vehicle with 181,000 miles versus 110,000 miles, and the only proof of damages was the purchase price of the vehicle.  Likewise, the court found no proof of the fair rental value of the vehicle, for the two years that it was driven by Plaintiff, that would enable mitigation of the buyer's damages.  As a result, the trial court found "no proof of any actual damages," and it dismissed the complaint.[3]

---

[1]  These subsections provide:

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
. . .
(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another[.]

Tenn. Code Ann. § 47-18-104(b).

[2]  Section 47-18-104(b)(16) declares that it is a violation of the Consumer Protection Act to disconnect, turn back, or reset the odometer of a motor vehicle "so as to reduce the number of miles indicated on the odometer gauge, except as provided for in § 39-14-132(b)[.]" In turn, section 39-14-132(b), provides, in part:

(b)(1) A person may service, repair, or replace an odometer of a motor vehicle if the mileage registered by the odometer remains the same as before the service, repair or replacement. If the mileage cannot remain the same after every reasonable attempt to set the odometer to the mileage registered prior to the service, repair or replacement:

(A) The person shall adjust the odometer to read zero (0); and
(B) The owner of the vehicle or agent of the owner shall affix to the left door frame of the vehicle a secure, permanent plate or sticker conforming with federal standards which contains the mileage before the service, repair or replacement and the date of the service, repair or replacement.

[3]  "In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Campbell v. Teague*, No. W2009-00529-COA-R3-CV, 2010 WL
(continued...)

Plaintiff filed a "Motion" pursuant to Tennessee Rule of Civil Procedure 59.01, asking the court to amend its judgment or to make additional findings of fact. The entire basis of the motion was stated as follows:

1. That the Court's decision rendered on the 3rd day of June, 2013, stated on page two, paragraph six, and following, that the Court finds there is no proof of misrepresentation, fraud, or other misconduct;
2. That the Movant asserts there is on the record sufficient evidence to conclude that the Respondent took steps in the original transaction and in the defense of this litigation to act in a fraudulent, willful, deliberately deceitful manner to conceal the falsified odometer reading on the purchased vehicle.

Defendants filed a response, noting that the trial court had held a hearing, taken the matter under advisement, and issued its ruling, and Defendants urged the trial court not to amend its decision.

At the hearing on Plaintiff's motion, Plaintiff's counsel said he was asking for "additional findings or for a change in the Court's decision." Counsel asked the court to examine the notary stamp on the Buyers Guide and compare it with the notary stamp on the power of attorney document. Counsel informed the court that the two notary stamps are different, with the notary stamp on the power of attorney listing the notary's name as "BEVERLYN LOUISE LeCORNU," and the notary stamp on the Buyers Guide listing her name as "BEVERLYN LE CORNU." Counsel stated that he had obtained a copy of a handbook that is issued to all county court clerks, and he said that the handbook requires all notaries to turn in their stamps when their notary commission expires. As a result, counsel suggested that Ms. Lecornu could not have had two different notary stamps on the date of sale, enabling her to stamp two different documents with two different stamps. Counsel suggested that Ms. Lecornu must have turned in her original notary stamp when her commission expired, and then obtained a different notary stamp. Thus, according to counsel, all of this would show that Ms. Lecornu used one stamp to notarize the power of attorney document on the date of sale in 2009, and the handwritten note and different notary stamp were placed on the Buyers Guide after Plaintiff threatened litigation in 2012; she did not witness Plaintiff's signature on the Buyers Guide, or the handwritten note, on the date of sale in 2009.

<hr/>

[3](...continued)
1240732, at *6 (Tenn. Ct. App. Mar. 31, 2010) (quoting Tenn. Code Ann. § 47-18-109(a)(1)).

In response to the statements of Plaintiff's counsel, counsel for the Defendants reiterated that the trial court had already held a hearing on this matter, and he stated:

> Now he brings in things about notary stamps, all of these things. If I had known we were going to retry it, I would have had the LeCornus here and Mr. LeCornu's mother because that's not what a motion to reconsider or to amend or to make additional findings is about. It's not about that. It's about to take the proof that was presented at trial and you make additional findings about that -- not new proof that comes in today because anything about this notary stamp, I knew nothing about that, and that's new proof that they're trying to bring in today.

The trial judge then stated that arguments of counsel are not proof, to which Defendants' counsel responded that the "argument" presented by Plaintiff's counsel was not one that was presented at trial. He continued,

> That's not what this motion is intended for. And as far as the notary stamps and all of this stuff, that was proof that could have been presented at trial. He could have rebuked that at trial through cross-examination and other witnesses. There's no way to do that here today.
> . . . .
> Your Honor, everything that we presented at trial, Your Honor made a decision on. To come back and use this motion now and try to get a new trial or whatever we're trying to do here is just not proper under this motion.

Defense counsel suggested that there might be a simple explanation for the different notary stamps, but he added that it was impossible to know because the issue was not raised at trial. In response, Plaintiff's counsel pointed out that the notary stamps were on the documents presented to the court at trial, and he added, "Yeah, we didn't argue them because we didn't notice that, but it's in the record and now we're pointing out to the Court fraud." The trial judge again took the matter under advisement.

On July 19, 2013, the trial court entered another order stating that "the Court was in error in its decision," and it modified its previous order to find that Defendants "violated the Tennessee Consumer Protection Act by committing a fraud in the sale of the 2002 Chevrolet Avalanche to the Plaintiff on July 9, 2009." The trial court rescinded the sale, ordering the return of the vehicle and a refund of the purchase price.

Plaintiff then filed a "Motion to Alter or Amend," asking the court to specify which elements of the "purchase price" he was to receive, and he also requested an award of

-8-

attorney's fees. At the hearing, the trial judge stated that he had not considered an award of attorney's fees to Plaintiff because Plaintiff did not file an affidavit of attorney's fees at trial. Plaintiff's counsel submitted his affidavit of attorney's fees at the hearing on the motion to alter or amend. Defense counsel again objected on the basis that this was new proof not considered at trial. After the hearing, the trial court entered an order clarifying that the purchase price to be returned was $11,692, and it awarded Plaintiff $5,000 in attorney's fees. Both parties appealed to this Court.

## II. ISSUES PRESENTED

Defendants present the following issues for review on appeal:

1. Did the trial court err when it granted the Plaintiff's first motion to alter or amend by allowing Plaintiff to present new evidence and new legal arguments that were not presented at trial; and

2. Did the trial court err when it granted the Plaintiff's second motion to alter or amend, as this was essentially an impermissible motion to reconsider, and the court again allowed the Plaintiff to submit new evidence and new legal arguments.

Additionally, Plaintiff presents the following issue for review:

3. Whether the trial court erred in not granting the Plaintiff treble damages and additional attorney's fees.

For the following reasons, we reverse the decision of the chancery court, reinstate the trial court's order of June 20, 2013, and remand for further proceedings.

## III. STANDARD OF REVIEW

"We review a trial court's determination regarding whether to grant a Rule 59.04 motion to alter or amend a judgment under an abuse of discretion standard." *Van Grouw v. Malone*, 358 S.W.3d 232, 236 (Tenn. Ct. App. 2010) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). "Likewise, a trial court's decision to deny or grant a motion for additional findings under rule 52.02 is within the discretion of the trial court." *Gazlay v. Tulsi Assoc.*, No. E2008-02490-COA-R3-CV, 2010 WL 1404412, at *3 (Tenn. Ct. App. Apr. 8, 2010) (citing *Holladay v. Speed*, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005)).

IV. DISCUSSION

## A. The Filing of Two Motions to Amend

First, we will consider Defendants' argument on appeal that it was impermissible under the Tennessee Rules of Civil Procedure for Plaintiff to file two motions to alter or amend. Defendants argue on appeal that it was error for the trial court to consider the second motion to alter or amend because it was essentially a motion asking the trial court to reconsider the first motion to alter or amend. This is an important question because it involves the subject matter jurisdiction of the trial court and this Court. Orders resolving all the claims between all the parties become final thirty days after they are entered, unless a party files a certain type of post-trial motion in a timely manner. *Chorost v. Chorost*, No. M2000-00251-COA-R3-CV, 2003 WL 21392065, at *4 (Tenn. Ct. App. June 17, 2003) (citing *State v. Pendergrass*, 937 S .W.2d 834, 837 (Tenn. 1996); *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 766 (Tenn. Ct. App. 2001); *Waste Mgmt., Inc. of Tenn. v. South Cent. Bell Tel. Co.*, 15 S.W.3d 425, 429 (Tenn. Ct. App. 1997)). "A trial court loses jurisdiction over a case once its judgment has become final, and it cannot modify the judgment even if the parties agree to the trial court's action." *Id.* (citing *State v. Peele*, 58 S.W.3d 701, 704 (Tenn. 2001); *State v. Moore*, 814 S.W.2d 381, 382-83 (Tenn. Crim. App. 1991)).[4] "Thus, after a trial court loses jurisdiction over a case, it does not have the authority to hear or decide a late-filed Tenn. R. Civ. P. 59.04 motion." *Id.* (citing 6A James W. Moore et al., *Moore's Federal Practice & Procedure* ¶ 59.09[1], at 59-226 through 59-227 (2d ed. 1996); 11 Charles A. Wright et al., *Federal Practice & Procedure* § 2812, at 138-39 (2d ed. 1995)). In our case, then, if the second motion to alter or amend filed by Plaintiff was unauthorized or not a valid motion, the trial court lacked jurisdiction to consider the motion, and its order on the second motion to alter or amend is void. *See id.*

The alleged invalidity of the second motion to alter or amend has a second, related ramification as well. Not every post-judgment motion will have the effect of extending the deadline for filing a notice of appeal. *Lee v. State Volunteer Mut. Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *6 (Tenn. Ct. App. June 17, 2005). Only certain timely post-trial motions, which are specifically listed in the Rules, will toll the time for filing a notice of appeal. *Chorost*, 2003 WL 21392065, at *4 (citing *Savage v. Hildenbrandt*, No. M1999-00630-COA-R3-CV, 2001 WL 1013056, at *9 (Tenn. Ct. App. Sept. 6, 2001), *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 414, 421 (Tenn. Ct. App. 1988); *Parker v. Vanderbilt Univ.*, No. 87-288-II, 1987 WL 26380, at *1 (Tenn. Ct. App. Dec. 9, 1987)). "A timely notice of appeal is a necessary ingredient to our appellate subject matter jurisdiction

---

[4] "In civil cases, the trial court may modify a final judgment under Tenn. R. Civ. P. 60." *Chorost*, 2003 WL 21392065, at *4 n.6.

to review a trial court's decision." ***Id.*** (citing *Arfken & Assocs., P.A. v. Simpson Bridge Co.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002); *Coldwell Banker-Hoffman Burke v. KRA Holdings*, 42 S.W.3d 868, 873 (Tenn. Ct. App. 2000); *Begley Lumber Co. v. Trammell*, 15 S.W.3d 455, 456 (Tenn. Ct. App. 1999)).

Accordingly, the effect of our finding regarding Plaintiff's second motion to alter or amend is two-fold. If we determine that the second motion was not a valid motion, then the order on Plaintiff's first motion to alter or amend became final thirty days after its entry when the parties failed to file a notice of appeal or a proper motion that extended the time for appeal. Such a holding would render void the order on the second motion to alter or amend and also divest this Court of jurisdiction to consider the issues raised on appeal. *See **id.*** Conversely, if Plaintiff's second motion to alter or amend was a valid motion, then the parties' notices of appeal, filed within thirty days of the order on the second motion, were effective.

Rule 59.01 of the Tennessee Rules of Civil Procedure provides that there are only four motions contemplated by the Rules that will extend the time for filing a notice of appeal: "(1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment." *See also* Tenn. R. App. P. 4(b) (listing these same four motions and providing that the time for appeal runs from the entry of the order denying a new trial or granting or denying any other such motion).

Here, Plaintiff filed a post-trial "Motion" citing Rule 59.01, asking the court to amend its judgment or to make additional findings of fact. Then, upon entry of the amended order, Plaintiff filed a second post-trial motion entitled "Motion to Alter or Amend."

Defendants are correct in their assertion that motions to "reconsider" a previously decided Rule 59 motion are not permitted. For instance, in ***Gassaway v. Patty***, 604 S.W.2d 60 (Tenn. Ct. App. 1980), a party filed a post-trial motion, within thirty days of the judgment, "seeking to set aside the judgment, grant rehearing or enter judgment for defendant," and when this motion was overruled, he filed another motion asking the court to reconsider its decision on the prior motion, set aside the judgment and otherwise alter and amend the judgment. After this second motion was denied, he filed a notice of appeal. The Court of Appeals held that the second motion was impermissible:

> . . . Rule 4(b) clearly mandates that the time for appeal for all parties shall run from the entry of an order denying a new trial. The Tennessee Rules of Appellate Procedure provide procedures to be followed in order that the rights

of the parties can be resolved with certainty and finality. To validate appellant's appeal would require us to disregard the express language of the rules and the result would enable parties to file repeated post-judgment motions in the trial court. The rules are designed to avoid undue delays and T.R.A.P., Rule 2, expressly prohibits appellate courts from extending the time for taking an appeal as of right since the rights of the parties remain uncertain during the time available for filing a notice of appeal.

*Id.* at 61.  Because the second motion, seeking reconsideration of the first, did not operate to extend the time for filing a notice of appeal, the appellant's appeal was dismissed.  *Id.*

In accordance with the holding in *Gassaway*, Rule 59.01 was amended to expressly state that "[m]otions to reconsider" rulings on the four specified motions "are not authorized and will not operate to extend the time for appellate proceedings." **Tenn. R. Civ. P. 59.01.** The Advisory Commission Comment to the Rule states, "Filing and serving motions in serial fashion will not extend the time for filing a notice of appeal with the trial court clerk." "The purpose of the rule is to bring finality to proceedings in the trial court when the trial judge has ruled upon any of the listed motions." *Daugherty v. Lumbermen's Underwriting Alliance*, 798 S.W.2d 754, 757 (Tenn. 1990).  For example, in *Daugherty*, a party filed, within thirty days of judgment, a "motion for new trial and/or in the alternative motion for relief from judgment and/or in the alternative motion to amend judgment," and after it was denied, he filed a Rule 60 motion alleging the exact same ground for relief contained in the previous motion.  The Supreme Court concluded that the second motion "was, in substance, nothing more than a motion to reconsider the [first] motion [] because it was brought on the identical single ground alleged in both motions." *Id.*  As a result, the Court found the second motion was prohibited by Rule 59.01 and a "nullity." *Id.*; *see also Anderson Properties v. Inman*, No. 01A01-9503-CH-0008,  1995 WL 502669, at *7 (Tenn. Ct. App. Aug. 25, 1995) ("Because there must be an end to litigation, the second motion to alter or amend *on the same grounds* as the first motion is a nullity.") (emphasis added); *State ex rel. Metropolitan Knoxville v. City of Alcoa*, No. 03A01-9307-CH-00264, 1994 WL 111043, at *5 (Tenn. Ct. App. 1994) (finding a motion to alter or amend was unauthorized and did not extend the time for filing a notice of appeal where it was, in substance, "nothing more than a motion to reconsider" an earlier motion to amend the court's findings of fact).  As can be seen from these cases, a second motion alleging the same grounds as a previous Rule 59 motion, or essentially, a motion to reconsider, is not permitted by the Rules.

In our case, Plaintiff correctly notes that the subject matter of his two motions differed, as the first asked for reversal of the trial court's finding that there was no fraud, and upon obtaining a favorable ruling, the second motion sought clarification as to the amount of the purchase price to be returned, and an award of attorney's fees.  Thus, we agree with

-12-

Plaintiff that the substance of the two motions was different, and he was not simply asking the trial court to "reconsider" a previously filed motion alleging the same grounds, as the party did in *Daugherty.* However, this conclusion does not end our inquiry. As noted above, the Advisory Commission Comment to Rule 59.01 states, "Filing and serving motions in serial fashion will not extend the time for filing a notice of appeal with the trial court clerk." Likewise, cases interpreting Rule 59.01 contain some broad language that could be read as prohibiting the procedure employed in this case.

In *Brenneman v. Brenneman*, No. M2000-00890-COA-R3-CV, 2001 WL 543434, at *3 (Tenn. Ct. App. May 23, 2001), one party filed a motion to alter or amend that led the trial court to enter an amended order, and in response, the opposing party filed her own motion to alter or amend. The Court stated:

> Tenn. R. Civ. P. 59.01 prevents *the same party* from filing successive Tenn. R. Civ. P. 59 motions. However, it does not prevent a party from filing a Tenn. R. Civ. P. 59 motion seeking to alter or amend a judgment that has been changed in response to *another* party's Tenn. R. Civ. P. 59 motion. That is precisely what happened in this case.

(Emphasis added). The Middle Section said basically the same thing in *Savage v. Hildenbrandt*, No. M1999-00630-COA-R3-CV, 2001 WL 1013056, at *8 (Tenn. Ct. App. Sept. 6, 2001) ("Tenn. R. Civ. P. 59.01 prevents the same party from filing successive Tenn. R. Civ. P. 59 motions; it does not prevent a party from filing a Tenn. R. Civ. P. 59.04 motion seeking to alter or amend a judgment that has been changed in response to another party's Tenn. R. Civ. P. 59 motion. . . . That is precisely what happened in this case.") That is also what happened in *Albert v. Frye*, 145 S.W.3d 526 (Tenn. 2004). There, the trial court originally entered an order dismissing the complaint against Defendant Frye, and in response, the plaintiffs filed a motion to alter or amend, which led the trial court to enter an amended judgment awarding the plaintiffs damages against Mr. Frye. *Id.* at 527. After entry of the amended order, Mr. Frye filed a motion to alter or amend. The issue on appeal was whether this second motion to alter or amend (but the first filed by Mr. Frye) was permissible, and the Supreme Court held that it was. The Supreme Court distinguished Mr. Frye's situation from the facts in *Gassaway*, "where one party was filing post-trial motions in a serial manner in an attempt to extend the time to appeal." *Id.* at 528. The Court explained that "Mr. Frye did not file successive post-trial motions. Rather, Plaintiffs filed the first post-trial motion to alter or amend, and then Mr. Frye filed his motion to alter or amend after the court ruled on Plaintiffs' motion." *Id.* The court noted that it was not until the judgment was entered against Mr. Frye, in response to Plaintiff's motion to alter or amend, that he first had an opportunity to file a motion to alter or amend, because it was at that time when the trial court first entered a judgment for monetary damages against him. *Id.* The Supreme Court noted

-13-

in a footnote that "[i]n two similar, but unreported cases, [*Brenneman* and *Savage*], the Court of Appeals found that while Tennessee Rule of Civil Procedure 59.01 prevents the same party from filing successive post-trial motions, it does not prevent a party from filing a Rule 59.04 motion to alter or amend a judgment that has been changed in response to another party's Rule 59 motion." *Id.* at 528 n.2. In sum, the Supreme Court concluded that it was permissible for Mr. Frye to file a motion to alter or amend the amended judgment that was changed in response to the plaintiffs' motion to alter or amend. Therefore, the thirty-day time limit for appeal did not begin to run until the trial court denied Mr. Frye's motion to alter or amend. *Id.* at 528-29.

Our case is different than the situation in *Albert*, *Brenneman*, and *Savage*, because here, the trial court granted Plaintiff's first motion to alter or amend and changed its judgment, and in response, it was the same party – Plaintiff – who filed a second motion to alter or amend, seeking clarification of the amount of the purchase price to be returned pursuant to the amended judgment, and seeking attorney's fees. Our research has not revealed a case in which a Tennessee appellate court has expressly considered whether Rule 59.01 allows a party to file a second motion to alter or amend if it was that party who successfully moved the trial court to amend its judgment, nor have the parties cited any such cases.[5]

Two more cases are worth mentioning, although neither of them involves facts precisely like those before us. *Graybeal v. Sherrod*, No. E2011-01825-COA-R3-CV, 2012 WL 4459807 (Tenn. Ct. App. Sept. 27, 2012) was a suit between a lawyer and a client. A final judgment was entered in the trial court in April 2010, and the client timely filed a motion to alter or amend. *Id.* at *9. In September 2010, the trial court denied the client's motion to alter or amend and reaffirmed its original judgment. *Id.* The lawyer then filed his own motion to alter or amend, which the trial court denied, and the lawyer filed a notice of appeal. The Court of Appeals held that this was impermissible, with the following explanation:

> Had the September 2010 judgment altered the April 2010 judgment in
> a manner adverse to the Lawyer, it would have had the effect of starting the
> time anew for filing a timely motion pursuant to Tenn. R. Civ. P. 59. *Albert v.*
> *Frye*, 145 S.W.3d 526, 528 (Tenn. 2004), see *Ball v. McDowell*, 288 S.W.3d
> 833, 838 (Tenn. 2009) ("We conclude that when consecutive 'final' judgments

---

[5] In *Brenneman* and *Savage*, the Courts did state that "Tenn. R. Civ. P. 59.01 prevents the same party from filing successive Tenn. R. Civ. P. 59 motions." However, those cases did not involve a situation where the same party filed more than one Rule 59 motion, so the Courts' statements would appear to be *dicta*.

are entered, a subsequent entry of judgment operates as the final judgment only if the subsequent judgment affects the parties' substantive rights or obligations settled by the first judgment."). However, because the September 2010 judgment did not adversely change the original April 2010 judgment vis-a-vis the Lawyer, the September 2010 judgment became immune from Tenn. R. Civ. P. 59 alteration and subject to alteration only pursuant to Rule 60. *See id.* The result is that the Lawyer's motion to alter or amend filed on October 14, 2010 was ineffective to toll the time for filing a notice of appeal because it was filed more than 30 days after entry of the April 2010 judgment. *Gassaway v. Patty*, 604 S.W.2d 60, 61 (Tenn. Ct. App. 1980) (the time for "all parties" for filing a notice of appeal runs from the first order denying a Rule 59 motion). *Gassaway* has come to stand for the proposition that all such motions must be timely filed from the date of the judgment to be altered and that successive Rule 59 motions are not allowed. See also *Parks v. Mid–Atlantic Finance Co.*, 343 S.W.3d 792, 799 (Tenn. Ct. App. 2011) (citing *Albert* for the same proposition). The one exception that has been allowed is the one in *Albert* where one party files a Rule 59 motion upon which the court essentially enters a new judgment, forcing **the adverse party** to then seek correction of that new judgment. That is not what happened in the present case.

*Id.* at *10 (footnote omitted) (emphasis added). Thus, the Court of Appeals held that the lawyer could not file a motion to alter or amend after the trial court *denied* the client's original motion to alter or amend. Still, this is not the situation we have before us.

Finally, in **Barnes v. Barnes**, No. M2012-02085-COA-R3-CV, 2014 WL 1413931, at *2 (Tenn. Ct. App. W.S. Apr. 10, 2014), we considered a situation where both parties filed motions to alter or amend a divorce decree, the trial court amended its decree in ways that mostly benefitted the husband, and the wife then filed another motion to alter or amend, seeking alteration of the amended decree. The husband argued that this was an impermissible motion to reconsider a Rule 59 motion, unauthorized under Rule 59.01. *Id.* at *3. We agreed with Husband's assertion that Rule 59.01 "prevents a party from filing successive or serial post-trial motions." *Id.* We pointed out that the Rule "does not, however, prevent a party from filing a Tenn. R. Civ. P. 52.02 motion to make additional findings of fact or a Tenn. R. Civ. P. 59.04 motion to alter or amend with respect to a judgment that has been changed in response to another party's Tenn. R. Civ. P. 59 motion." *Id.* (citing *Albert*, 145 S.W.3d at 528; *Savage*, 2001 WL 1013056 at *8; *Brenneman*, 2001 WL 543434, at *3). As a result, we said that if the wife's second motion had "merely sought reconsideration of the denial of her first [Rule 59] motion, the motion would not be authorized by Tenn. R. Civ. P. 59 and would not extend the time for a notice of appeal." *Id.* at *4. Upon reviewing the second motion, however, we concluded that it challenged some

of the findings made in the trial court's amended order. Because the wife's second motion sought, in part, relief related to the portion of the judgment that was changed in response to the husband's original Rule 59 motion, we concluded that "at least a portion of the motion was authorized by Tenn. R. Civ. P. 59 and operated to extend the time for filing a notice of appeal." *Id.* In *Barnes*, then, the wife was permitted to file two motions to alter or amend. She was not precluded from filing a second motion to alter or amend, challenging the order that was amended in response to the husband's motion to alter or amend, even though she had filed a motion to alter or amend prior to the amended order.

We can glean the following principles from Rule 59.01 and from these cases. Rule 59.01 prohibits motions to "reconsider," on the same grounds, a previously decided Rule 59 motion. *See Gassaway*, 604 S.W.2d at 60; Tenn. R. Civ. P. 59.01. Rule 59 also prohibits a party from filing a motion to alter or amend a judgment that is *not changed* when a trial court enters an order in response to another party's timely motion to alter or amend. *See Graybeal*, 2012 WL 4459807, at *10. A party can file a motion to alter or amend a judgment that *has* been changed in response to *another party's* Rule 59 motion. *Albert*, 145 S.W.3d at 526; *Savage*, 2001 WL 1013056, at *8; *Brenneman*, 2001 WL 543434, at *3; *see also Graybeal*, 2012 WL 4459807, at *10 (recognizing that a judgment altered in a manner adverse to a party will have the effect of starting the time anew for filing a timely motion pursuant to Rule 59). In addition, filing two motions to alter or amend is not always fatal – a party can file a motion to alter or amend a judgment that was amended in response to his opponent's motion even if he or she has already filed one motion to alter or amend prior to the amended judgment. *See Barnes*, 2014 WL 1413931, at *3-4.

The question remains as to whether a party can file a Rule 59 motion in response to an amended judgment when it was that party who successfully moved for the amended judgment. We believe that such a party should be allowed to do so, assuming, of course, that the second motion is not simply a motion to "reconsider" previously asserted grounds. The purpose of a Rule 59 motion to alter or amend a judgment is to prevent unnecessary appeals by providing the trial court with an opportunity to correct errors before the judgment becomes final. *Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012). That is precisely what Plaintiff sought to do in this case. After the trial court amended its judgment to rule in Plaintiff's favor, Plaintiff filed a motion to alter or amend, seeking clarification as to the amount of the purchase price to be returned, and asking the trial court to enter an award of attorney's fees, as requested in Plaintiff's complaint. We recognize that the purpose of Rule 59.01 is to bring finality to proceedings in the trial court when the trial judge has already ruled upon any of the listed motions. *Daugherty*, 798 S.W.2d at 757 (holding that a motion to reconsider, alleging the same grounds, was prohibited); *Anderson Properties*, 1995 WL 502669, at *7 ("Because there must be an end to litigation, the second motion to alter or amend *on the same grounds* as the first motion is a nullity.") (emphasis added).

However, the courts in *Albert*, *Savage*, and *Brenneman* have already recognized that when a trial court enters an amended judgment, the party who did *not* move for the amended judgment should be permitted to file a motion to alter or amend in order to seek correction of that new judgment. *See Graybeal*, at \*10. We can perceive no basis for denying the same avenue for relief to the party who moved for the amended judgment, if that party also perceives an error in the amended judgment. In other words, it should not matter if the judgment was changed in response to that party's motion or the motion of the opposing party. If an amended judgment contains errors or omissions, the party who moved for the amended judgment should not be precluded from bringing those errors to the trial court's attention prior to an appeal.

We reiterate that filing and serving motions "in serial fashion" is not authorized. Tenn. R. Civ. P. 59.01 adv. comm'n. cmt. "Because Rule 59 motions delay appeals and finality, successive Rule 59 motions are not allowed." *Parks v. Mid-Atlantic Finance Co., Inc.*, 343 S.W.3d 792, 799 (Tenn. Ct. App. 2011) (citing *Albert*, 145 S.W.3d at 528). In *Albert*, the Supreme Court described the situation in *Gassaway* as one where a party "was filing post-trial motions in a serial manner in an attempt to extend the time to appeal." There, of course, the party filed a motion to reconsider the denial of his first motion, alleging the exact same grounds. Similarly, in *Graybeal*, the party who waited until the trial court denied his opponent's motion to alter or amend, and then filed his own motion to alter or amend, had unnecessarily delayed the proceedings and undermined the need for finality. In contrast, the situation before us does not involve the type of "successive" or "serial" motions that unnecessarily delay the proceedings. Plaintiff sought an alteration of the amended judgment at the first opportunity available to him.

In short , the interests of judicial economy and efficiency are best served by allowing either party to challenge an amended judgment via a motion to alter or amend. Accordingly, we hold that Plaintiff's second motion to alter or amend, filed in response to the trial court's amended judgment, and seeking clarification as to the purchase price to be returned and an award of attorney's fees, was not an impermissible motion to reconsider a Rule 59 motion. The trial court did not err in considering the motion, and the motion served to toll the time period for filing a notice of appeal. The parties' notices of appeal, filed within thirty days of the entry of the order on the second motion, were therefore timely. We will now proceed to consider whether the trial court erred in granting Plaintiff's post-trial motions.

### B. The "Evidence" Presented in Support of the First Post-Trial Motion

On appeal, Defendants argue that it was improper for Plaintiff to present new evidence and/or new legal arguments at the hearing on the motion to alter or amend. Defendants correctly note that there was no mention at trial of a difference in the notary

stamps or a handbook relating to notaries and their responsibilities. Defendants argue that this "evidence" was available to Plaintiff prior to trial and throughout the proceedings below, and yet it was not presented until the hearing on the motion to alter or amend. Defendants contend that it was fundamentally unfair to expect them to defend against Plaintiff's new theories and argument at the hearing, and they claim that if they had known that these new arguments were going to be presented, they could have had Ms. Lecornu present to explain the differences in the notary stamps.

In response, Plaintiff argues that his "theory" was that Defendants committed fraud and violated the Consumer Protection Act, and this "theory" never changed, from the filing of the complaint until the hearing on the motion to alter or amend. Plaintiff concedes, however, that the particular issue involving the different notary stamps was not raised at trial, and "[t]he handbook referred to . . . was not introduced at trial because the notary stamps were not at issue." Plaintiff admits that "[Plaintiff's] argument . . . did change during the hearing on the first motion." He acknowledges in his brief, "The notary stamp discrepancy was only discovered during [Plaintiff's] counsel's preparation for the first Rule 59.01 motion[.]" Plaintiff recognizes that when the trial court was "faced with the discrepancy in the notary stamps," this "led to the Court's finding that [Defendants] had committed fraud when this additional information was added to the equation."

The purpose of a Rule 59 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final. *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 827 (Tenn. Ct. App. 2012) (citing *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). "A Rule 59 motion should only be granted 'when controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice' and 'should not be used to raise or present new, previously untried or unasserted theories or legal arguments.'" *In re Lawton*, 384 S.W.3d 754, 764 (Tenn. Ct. App. 2012) (quoting *In re M.L.D.*, 182 S.W.3d at 895).

In our view, the arguments of Plaintiff's counsel at the hearing on the motion to alter or amend exceeded simple legal argument and sought to present new evidence to the trial court. After Plaintiff's counsel pointed out the differences in the two notary stamps, he related to the court what, he claims, is stated in a handbook about notaries. He used these facts and information in an attempt to prove that Ms. Lecornu did not actually stamp the Buyers Guide on the date of sale. In doing so, we believe that Plaintiff's counsel did not just present legal arguments to the court but attempted to present new facts and evidence for the

court's consideration.[6]

As noted above, a motion to alter or amend may be granted "when previously unavailable evidence becomes available." *In re Lawton*, 384 S.W.3d at 764. The Tennessee Supreme Court discussed motions to alter or amend a judgment based on newly produced evidence in *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) and set forth the criteria the trial court must consider. *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008). When a party files a Rule 59 motion seeking to alter or amend a judgment and attempts to present additional evidence in support of such a motion, the trial court should consider: the moving party's effort to obtain the additional evidence that the moving party seeks to present; the moving party's explanation for failing to offer the evidence earlier in the proceedings; the importance of the new evidence to the moving party's case; the unfair prejudice to the non-moving party; and any other relevant consideration. *White v. Nissan North America, Inc.*, No. M2009-02189-WC-R3-WC, 2011 WL 1434613, at *5 (Tenn. Workers Comp. Panel Apr. 14, 2011) (citing *Stovall*, 113 S.W.3d at 721).

Here, the "newly discovered evidence" was in Plaintiff's possession all along, and it was only "newly discovered" because no one identified the discrepancy in the notary stamps prior to or during the trial. In other words, the evidence was always there but no one noticed it. Likewise, there is nothing in the record to suggest that Plaintiff could not have introduced the notary handbook at trial, as he admits in his brief that the reason it was not submitted at trial was because the notary stamps were not at issue. Although the new evidence is obviously important to Plaintiff's case, the prejudice to Defendants here was significant. Plaintiff's counsel was permitted to present his version of what is supposedly stated in the notary handbook, without any opportunity for opposing counsel, or the trial judge, to even see the handbook. Based upon the information that allegedly appears in the handbook, Plaintiff's counsel went on to present his own version of the "facts" regarding whether Ms. Lecornu possessed more than one notary stamp on the date of the sale, and whether she actually witnessed the signatures.[7] As noted by Defendants' attorney during the hearing, it

---

[6] Even if we were to find that Plaintiff's counsel's statements at the hearing constituted simple legal argument, it is well settled that a motion to alter or amend "may not be used to raise issues or legal arguments that previously were not tried or asserted." *Van Grouw*, 358 S.W.3d at 236 (citing *In re M.L.D.*, 182 S.W.3d at 895).

[7] On appeal, Plaintiff says "we can assume that the court did not consider" the information about the notary handbook because the trial court did not make specific findings in its amended order mentioning the notary handbook. We find no merit in this argument. The amended order simply stated that the court had erred in its original decision, without explaining what led the trial judge to change his mind. However, the "information" about the notary handbook was the lynchpin of Plaintiff's counsel's argument at the

(continued...)

is possible that there is a simple explanation for the difference in the notary stamps, but it is impossible to know at this juncture because the witnesses were not asked about this issue at trial. Considering the unfair prejudice to Defendants, and the fact that the "evidence" of the notary stamps was in Plaintiff's possession all along, the applicable factors lead us to conclude that the trial court abused its discretion in granting Plaintiff's motion to alter or amend the judgment. "'[W]here the litigants have already had a trial,'" and then a party seeks to present new evidence via a motion to alter or amend, "'courts should be cautious in altering their judgments.'" *White*, 2011 WL 1434613, at *6 (quoting *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000)).

For these reasons, we reverse the trial court's decision to grant Plaintiff's first motion to alter or amend, and we reinstate the trial court's original order of June 20, 2013, which dismissed Plaintiff's complaint for failure to meet his burden of proof. Specifically, the original order found "clear" proof that "the mileage of the subject vehicle was disclosed to the buyer as not being accurate" and there was "no proof of misrepresentation or fraud etc. or other misconduct to justify rescission of the contract." Because we have reinstated the trial court's original finding that Plaintiff failed to prove grounds for rescission and failed to prove actual damages under the Tennessee Consumer Protection Act, resulting in dismissal of the complaint, we need not consider Plaintiff's issue on appeal regarding his entitlement to additional or treble damages.

We likewise find that Plaintiff was not entitled to an award of attorney's fees. The Tennessee Consumer Protection Act provides that "[u]pon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(1). Thus, the statute "provides for a discretionary award to a prevailing party under the Tennessee Consumer Protection Act." *River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43, 50 (Tenn. Ct. App. 2002). Even though the trial court found that Defendants had technically violated Tennessee Code Annotated section 47-18-104(b)(16) and section 39-14-132(b), by disconnecting the odometer of a vehicle without turning it back to zero and affixing a permanent sticker on the door, the trial court dismissed Plaintiff's claim pursuant to the TCPA for failure to prove actual damages. The TCPA provides that "[a]ny person *who suffers an ascertainable loss* of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in

[7](...continued)
hearing on the motion to amend, and his basis for claiming that Ms. Lecornu could not possibly have had two notary stamps on the date of the sale. Therefore, we will not simply assume that the trial court failed to consider this information.

-20-

§ 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1) (emphasis added). Therefore, "[i]n order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated[.]'" *Campbell v. Teague*, No. W2009-00529-COA-R3-CV, 2010 WL 1240732, at *6 (Tenn. Ct. App. Mar. 31, 2010) (quoting Tenn. Code Ann. § 47-18-109(a)(1)); *see also Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495, 509 (Tenn. 2012). Because Plaintiff failed to prove actual damages, the trial court dismissed his claim pursuant to the TCPA. Consequently, Plaintiff is not entitled to an award of attorney's fees pursuant to the TCPA.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court, reinstate the trial court's original order of June 20, 2013, and remand for further proceedings. Costs of this appeal are taxed equally to appellants, Bobby Lecornu and Larry Lecornu d/b/a Midtown Motors, and their surety, and to appellee, Dereck Cruz Legens, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.