IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2017 Session

## WALTER STOKELY, ET AL. v. JAMES STOKELY, ET AL.

**Appeal from the Chancery Court for Greene County**
**No. 2015-0133    Douglas T. Jenkins, Chancellor**

_____

**No. E2017-00433-COA-R3-CV**
_____

This appeal arises from a family dispute over a life estate. Charles Eason, Thomas Eason, Marsha Grayer, and Walter Stokely ("Petitioners") filed suit against their siblings Anna Eason, James Stokely, and Mark Stokely ("Respondents") in the Chancery Court for Greene County ("the Trial Court") seeking partition of their late mother's home and property which they all had inherited but to which they had executed a quitclaim deed to sister Anna Eason to hold as life tenant. Respondents filed an answer asserting that Anna Eason was the life tenant and the land was not subject to partition. Respondents asserted the statute of limitations as a defense, as well. After a trial, the Trial Court dismissed Petitioners' lawsuit. Petitioners' appeal, arguing that Respondents waived the statute of limitations as a defense through abandonment and also that the Trial Court erred in not reforming the deed when the parties did not understand it would create a life estate for Anna Eason. We hold, *inter alia*, that Respondents properly pled the statute of limitations and could rely upon it. We hold further that Petitioners' lack of knowledge regarding all the implications of a life estate is not, in itself, a basis for reforming the deed. We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

E. Ronald Chesnut, Greeneville, Tennessee, for the appellants, Charles Eason, Thomas Eason, Marsha Grayer, and Walter Stokely.

Douglas L. Payne, Greeneville, Tennessee, for the appellees, Anna Eason, James Stokely, and Mark Stokely.

# OPINION

## Background

This appeal stems from a dispute among siblings over the home of their deceased mother, Betty Eason. Betty Eason died intestate in 2003. Although the siblings inherited their mother's property upon her death, the siblings were under the impression that they needed to take additional action lest they lose the property. The surviving siblings therefore went through attorney Grant Crum to create a deed. Anna Eason had lived in the home with her mother, and the parties desired to make provision for Anna Eason to continue living in the home as before.

Attorney Crum interpreted the family's request as one to create a life estate for Anna Eason in the subject property. For non-local siblings, limited power of attorney documents were prepared so that elder brother James Stokely could act on their behalf in the matter. The limited power of attorney contained the following language, in part: "As my attorney in fact, JAMES HOWARD STOKELY shall be and is hereby authorized to . . . execute a quitclaim deed reserving unto Anna Geraldine Eason a life estate in the above named property . . . ." A quitclaim deed also was created, stating the following, in part:

> For good and valuable consideration, the receipt of which is hereby acknowledged, We, ANNA GERALDINE EASON, THOMAS ANTHONY EASON, JAMES HOWARD STOKELY, Individually, and JAMES HOWARD STOKELY as attorney in fact for MARK STEVEN STOKELY, MARSHA LOUISE GRAYER, CHARLES PHILIP EASON, and WALTER LEE STOKELY, hereinafter referred to as the GRANTORS, have this day transferred, and by these presents do hereby relinquish, remise, release and quitclaim unto ANNA GERALDINE EASON, THOMAS ANTHONY EASON, JAMES HOWARD STOKELY, MARK STEVEN STOKELY, MARSHA LOUISE GRAYER, CHARLES PHILIP EASON, and WALTER LEE STOKELY, and SUBJECT TO A LIFE ESTATE RESERVED UNTO ANNA GERALDINE EASON, hereinafter referred to as the GRANTEES, any and all interest which we might have in the following described real estate . . . .

In time, family disagreements arose regarding Anna Eason's status in the home, the particulars of which have no bearing on the legal issues presented on appeal. In 2014 or 2015, Anna Eason discovered that she in fact held a life estate in the subject property. In April 2015, Petitioners filed suit in the Trial Court seeking partition of the property. In September 2015, Petitioners filed an amended petition, alleging in part as follows:

The Petitioners allege that the Respondents, and especially James Stokely, misrepresented the nature of the deed which is in controversy herein, at the time of the execution of same. Specifically, the Plaintiffs were told by the Respondents at that time, i.e. shortly after the demise of the parties' Mother, that the purpose of the "deed" was to transfer ownership of the real property to all of the heirs, i.e. the parties herein being the children of the deceased Mother. There was no mention of a "life estate" to be retained by any one of the children, and certainly not for Anna Eason. However, the parties did agree that the real property was to "remain the same" and further that the sister, Anna Eason, could remain living on the real property.

In October 2015, Respondents filed an answer to Petitioners' amended petition. Respondents asserted, among other things, the statute of limitations, as follows:

10. **Motion to Dismiss - Statute of Limitations**: The Petitioners seek the set aside of a purported fraudulent deed which has been of record in the Register's Office for Greene County, Tennessee since April 2, 2004. At no time have any of the Petitioners (who have frequently visited Greene County, or in Thomas Eason's case, a resident of Greene County) sought to avail themselves of redress until after all applicable statutes of limitations have expired (see TCA § 28-3-104, 105 and TCA § 28-3-110).

This case was tried in August 2016. Attorney Crum testified as to his involvement in the case:

Q. Did you back in 2004 have an opportunity to meet with certain individuals concerning an Estate matter for Betty L. Eason?
A. Yes, I handled the Estate of Ms. Eason.
Q. All right. Do you have a record in your file of who you met with?
A. I have looked through it. I do not have an inventory or a list of each person that was there that day. My recollection is most of the family was there, but not all.
Q. Okay.
A. I think very similar to what you've been discussing here, that a couple live out of state, and I believe one was active military at that time, if I remember correctly.
Q. All right. You remember meeting with more than one person, however.
A. Oh, yes, yes.

Q. Okay. And during that meeting was there a discussion about the real estate which was located here in Greeneville over on, I think, Sunset Street?
A. Yes.
Q. And what was that discussion?
A. My recollection is that everyone wanted Anna Eason to retain a Life Estate in the house because she would be living there. I've looked through my notes. I have written down Anna to have a Life Estate, but it is my recollection that everyone at that time was in agreement that they wanted her to be able to live at the house for the rest of her life.
Q. All right. And at that moment what was the status of the Title to that real estate?
A. Well, I can't, I believe she died intestate, but if I could look real quickly at my file.
Q. You certainly may look.
A. And just make positive of that fact. Yes, I'm sorry. She died without a Will. And so immediately upon her death the real estate would vest in all her children who were her next of kin and sole heirs at law. So immediately upon her death, it did vest in all the children.

The siblings testified, as well. The siblings agreed generally that no one quite understood all the implications of a life tenancy or life estate at the time of the execution of the quitclaim deed. The family's overarching desire, however, was that the home should remain a family home—a focal point for the family—but that Anna could continue to live there as she had in her mother's twilight years.

On November 22, 2016, the Trial Court entered its judgment denying relief to Petitioners and dismissing their case. The Trial Court incorporated into its judgment its oral ruling dated November 10, 2016, in which the Trial Court explained its decision. The Trial Court stated in relevant part:

The Court believes that based on all the proof he heard, it's a family matter where The Court was very, I guess, sad to see these people in a family feud over this. But after we got into it, I understood the issues, and I see the issues, and I am unable to afford the relief that the Plaintiffs seek for two main reasons. The law says very clearly in many different ways and many different places that if you sign a legal instrument, you have a duty to read it, you have duty to understand it, you have a duty to know what's in it, and you sign at your own peril. If you sign something and you don't completely understand what you're signing, you sign that instrument at your own peril. And so when this instrument was signed and done, even by an attorney-in-fact who was duly authorized to do so, The Court does not

-4-

believe you can then come back into court and seek to have that reformed claiming that a mistake had been made because you take responsibility for your mistake when you sign an instrument without either reading it or taking sufficient time to know what's in it. That's No.1. No. 2, the instrument in question, I believe, was signed and entered into in the Month of March, 2004. The suit to reform that was filed April 21st, 2015. That is eleven (11) years and one (1) month after the fact. The applicable statute of limitation is ten (10) years. So the remedy that is sought by the Plaintiffs is not available to them because of a lapse of time. But as I said in No.1 above, it's just not a case for reformation in the first place. Also, Mr. Chesnut filed a very good post-trial brief in which he argued that Mr. Payne had waived the statute of limitation issue by a failure to mention it at the beginning of the trial when I asked Counsel what the relevant issues were, and they were enumerated, and no one mentioned statute of limitation. However, The Court does not believe that position is in line with applicable law, and Mr. Payne did plead a proper statute of limitation in his pleadings, and a failure to mention it at the beginning of the trial, The Court does not believe that amounts to a waiver. And for those reasons, the Plaintiffs' complaint is dismissed and tax costs to the Plaintiffs.

In December 2016, Petitioners filed a motion for new trial, or, to alter or amend judgment. Respondents filed a response in January 2017. In February 2017, the Trial Court entered an order denying Petitioners' motion. Petitioners appealed to this Court.

## Discussion

Although not stated exactly as such, Petitioners raise the following issues on appeal: 1) whether Respondents waived the affirmative defense of the statute of limitations; 2) whether the Trial Court erred in finding, sua sponte, the statute of limitations to be applicable; and, 3) whether the Trial Court erred in finding there was no mutual mistake as to the insertion of a life estate in the Quitclaim Deed when the signors did not appreciate all the implications of a life estate. Respondents raise their own issue of whether Petitioners' motion for a new trial, or, to alter or amend judgment, was sufficient to toll the 30-day period in which to file an appeal.

We first address whether Petitioners' motion for a new trial, or, to alter or amend judgment, was sufficient to toll the 30-day period in which to file an appeal. Respondents argue that this Court lacks subject matter jurisdiction to hear this appeal because Petitioners' motion was in substance merely a "motion to reconsider," thus incapable of tolling the time in which to appeal. To recap the timeline, judgment was entered in November 2016. Petitioners timely filed their motion for a new trial in

December 2016. The Trial Court denied it in February 2017. Petitioners filed their notice of appeal also in February 2017. Petitioners' motion for a new trial, or, to alter or amend judgment, stated as follows:

> Come the Petitioners, through counsel, and respectfully moves this Honorable Court for a New Trial in this cause, or alternatively to alter or amend the Judgment herein, pursuant to Rule 59 T.R.CIV.P., on the following grounds:
> 1. The Court erroneously found that there was no mutual mistake of fact as to the insertion of a life estate in the subject deed herein.
> 2. The Court erred in applying the legal standard herein, i.e. that a legal instrument is signed at one's own peril, even if the signors did not understand the contents of the legal instrument.
> 3. The court erred in refusing to apply the doctrine of "mutual mistake" and holding that same was inapplicable herein.
> 4. The Court erred in finding that the Respondents did not waive any applicability of the otherwise applicable statute of limitations.
> WHEREFORE Plaintiffs pray that the Court grant a new trial and/or alter or amend the Judgment herein accordingly.

Petitioners' motion indeed was quite sparse. The issue, then, is whether the motion was so deficient as to not toll the period in which to file an appeal. This Court has discussed those motions serving to extend time in which to appeal:

> Tenn. R. App. P. 4(a) requires an appealing party to file a notice of appeal within thirty days after the date of entry of the judgment being appealed. The thirty-day deadline may be extended by the filing of certain post-judgment motions; however, not every post-judgment motion has the effect of extending the deadline for a notice of appeal. *See, e.g., Daugherty v. Lumberman's Underwriting Alliance*, 798 S.W.2d 754, 757-58 (Tenn. 1990). Only the filing of one or more of the four post-judgment motions specifically listed in Tenn. R. Civ. P. 59.01 and Tenn. R. App. P. 4(b) will operate to extend the time for taking steps in the regular appellate process. The four post-judgment motions specified in those rules are as follows: "(1) a motion under Tenn. R. Civ. P. 50.02 for judgment in accordance with a motion for a directed verdict; (2) a motion under Tenn. R. Civ. P. 52.02 to amend or make additional findings of fact; (3) a motion under Tenn. R. Civ. P. 59.02 for a new trial; and (4) a motion under Tenn. R. Civ. P. 59.04 to alter or amend the judgment." *Lee v. State Volunteer Mut. Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *6 (Tenn. Ct. App. Jan. 21, 2005).

In determining whether a post-judgment motion is one of the specified motions that will operate to extend the deadline for filing a notice of appeal, however, appellate courts cannot simply rely on the motion's title. In recognition of Tenn. R. Civ. P. 8.05's directive that "[n]o technical forms of pleading or motions are required," the Tennessee Supreme Court has instructed that courts facing such a decision should consider the substance of the motion, rather than its title or form. *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). Accordingly, courts must parse through the body of the motion to determine whether it requests the sort of relief available through one of the four motions specified in the procedural rules. *Lee*, 2005 WL 123492, at *7.

*Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *4-5 (Tenn. Ct. App. Feb. 10, 2016), *Rule 11 appl. perm. appeal denied June 24, 2016.*

As to form, Petitioners' motion duly presents itself as a motion for a new trial, or, to alter or amend judgment, thereby fitting, at least by its title, into the necessary category of motions. As to substance, Petitioners raise four assignments of alleged error by the Trial Court. While these assignments of error are very brief and largely ask the Trial Court to reconsider its decision, they are not so deficient, in our judgment, as to render the motion entirely something other than what it purports to be. Petitioners' motion for a new trial, sparse as it was, served to toll the time in which to file a notice of appeal. We hold that this Court has subject matter jurisdiction to hear this appeal.

Moving to Petitioners' issues, we now address whether Respondents waived the affirmative defense of the statute of limitations. Petitioners acknowledge that Respondents properly pled the statute of limitations in their answer to the amended petition. Petitioners argue, however, that Respondents abandoned the defense by failing to assert it again before trial. The following exchange, cited by Petitioners, occurred at the onset of trial in this matter:

MR. PAYNE: In light of the fact that - - and I don't guess it's ever been put on the record - - but there were multiple grounds for relief originally sought. My understanding from Mr. Chesnut is we are now down to one ground for relief, mutual mistake.
MR. CHESNUT: That is correct, Judge.
THE COURT: Okay. And then Mr. Chesnut, to go a step further, are you asking me if in fact I do reform the Deed to eliminate the life estate to then order a partition sale?
MR. CHESNUT: Yes, that is correct.

\*\*\*

THE COURT: ... so the only issue here today is, does the life estate remain in the Deed such that partition would be prevented.
MR. PAYNE: Yes.
MR. CHESNUT: That's correct.
THE COURT: Okay.
MR. PAYNE: That is right.
THE COURT: Very good.

In the above-quoted exchange, counsel for Respondents, Mr. Payne, appears to simply be characterizing the issue he expects Petitioners to put forward for trial. Respondents did not withdraw the statute of limitations affirmative defense. Respondents already had properly pled the affirmative defense of the statute of limitations, as acknowledged by Petitioners. We hold that Respondents did not waive the statute of limitations as an affirmative defense.

The next issue we address is whether the Trial Court erred in finding, sua sponte, that the statute of limitations was available. The Trial Court brought up the earlier-pled statute of limitations issue at the conclusion of trial in this manner:

THE COURT: Okay. Any more questions? Any more proof?
MR. PAYNE: We rest.
THE COURT: Any rebuttal? Are you going to argue?
MR. PAYNE: I've made my argument.
THE COURT: What about this ...
MR. PAYNE: Well, the only thing I was ...
THE COURT: ... what about this ten year Statute of Limitation? Do you need to talk about that, or is that out the window? What's the deal with that? **You pled it**.
MR. PAYNE: Yes. Two things, and I'm going to come back to that . . . .

(Emphasis added). This Court previously has discussed a scenario when a trial court incorrectly raised the statute of limitations on its own, as follows:

Whether the statute of limitations bars a particular claim is a question of law. *Estate of Butler v. Lamplighter Apartments*, 278 S.W.3d 321, 324 (Tenn. Ct. App. 2008) (citations omitted). We review questions of law de novo without a presumption of correctness. *Id*. The statute of limitations is an affirmative defense that may bar or limit a plaintiff's

-8-

recovery. "Affirmative defenses, including the statute of limitations, must be plead in response to a preceding pleading." *Poss v. Turner*, No. M2005-01008-COA-R3-CV, 2007 WL 187811, at *4 (Tenn. Ct. App. M.S., Jan. 24, 2007); Tenn. R. Civ. P. 8.03. The rationale for specific pleading requirement is to "prevent a party from raising a defense at the last possible moment and thereby prejudicing the opposing party's opportunity to rebut the defense." *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995); *see also George v. Alexander Auto., LLC*, No. M2006-02655-COA-R3-CV, 2007 WL 2726373, at *1 (Tenn. Ct. App. W.S., Sept. 19, 2007).

In this case, the statute of limitations was never raised as an affirmative defense in a pleading or by motion at trial. The statute of limitations was not mentioned until the trial court's final memorandum opinion. In the trial court's order concerning the statement of the evidence pursuant to Tenn. R. App. P. 24(e), the court stated:

> The court, on its own, thought the statute of limitations was applicable to the case. The parties were focused solely on "she knew" versus "I did not know" about Mr. Fryer's legal right to spousal support.

By the trial court's own admission, Husband had no notice of the statute of limitations as a potential issue. In Conservator's motion to dismiss Husband's Amended Petition, the statute of limitations is not addressed as a basis to dismiss the claim. Husband never had the opportunity to rebut the statute of limitations as a defense to his recovery of the spousal support. Because the statute of limitations was raised so late in this case, we find that it resulted in prejudice to Husband. The trial court erred in applying the statute of limitations, sua sponte, to reduce the amount of spousal support owed to Husband.

*Fryer v. Conservatorship of Fryer*, No. E2009-01009-COA-R3-CV, 2010 WL 3893765, at *6 (Tenn. Ct. App. Oct. 5, 2010) (footnotes omitted), *no appl. perm. appeal filed*.

In the present case, by contrast, it cannot be said that Petitioners lacked any notice of the statute of limitations as a potential issue. Respondents had properly pled the statute of limitations as an affirmative defense in their answer to the amended petition. Therefore, Petitioners were not ambushed by it, and should have known it could arise as an issue at trial. We hold that the Trial Court committed no reversible error in soliciting argument and then ruling on an issue properly pled.

The final issue we address is whether the Trial Court erred in finding there was no mutual mistake as to the insertion of a life estate in the Quitclaim Deed when the signors did not appreciate all the implications of a life estate. This Court has stated: "Ordinarily, one having the ability and opportunity to inform himself of the contents of a writing before he executes it will not be allowed to avoid it by showing that he was ignorant of its contents or that he failed to read it." *Solomon v. First American Nat. Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989). We find it of no particular moment whether the parties knew exactly all the ramifications of a life estate, and this is especially so given that all the parties agreed that Anna Eason could continue living in the home as before their mother's death. The parties executed the quitclaim deed that clearly established a life estate for Anna Eason. The power of attorney documents, likewise, clearly provide that a life estate for Anna Eason was envisioned. Petitioners have no basis upon which now to assert ignorance, and therefore, mutual mistake. The life estate for Anna Eason, and only her, was spelled out in the documents.

Moreover, when Betty Eason died intestate, the subject property passed on equally to the siblings. The siblings wanted Anna Eason to continue to live in the home indefinitely as before and had a legal document prepared to secure that outcome. That desired outcome was, in essence, a life estate. Even if Petitioners were completely unaware of the precise legal definition of a life estate, it is difficult to see how they were in any sense misled when the deed conformed to their wishes regarding Anna Eason's continued residence at the home. Anna Eason remains life tenant of the subject property, and we affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Charles Eason, Thomas Eason, Marsha Grayer, and Walter Stokely, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE